IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-10-185(1) |
| | § | |
| VINCENT WALLACE ALDRIDGE | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant, Vincent Aldridge's Motion for Government to Produce Work Product to Court for In Camera Inspection (Docket Entry No. 118), and Motion to Dismiss Indictment and Request for Evidentiary Hearing and Oral Argument (Docket Entry No. 119).   For the reasons explained below the pending motions will be denied.

## I. Factual and Procedural Background

On March 25, 2010, a grand jury in the Houston Division of the Southern District of Texas returned an indictment against Aldridge and two other defendants, Tori Elyse Aldridge and Gilbert Barry Isgar.[1]   The indictment charged Aldridge with one count of conspiracy to commit wire fraud and mail fraud under 18 U.S.C. § 1349 (Count One), eleven counts of wire fraud under 18 U.S.C. §§ 2 and 1343 (Counts Two through Twelve), one count of conspiracy

---

[1]Indictment, Docket Entry No. 1.

to commit money laundering under 18 U.S.C. §§ 1956(h) and § 1957(a)
(Count Thirteen), and six counts of money laundering under 18
U.S.C. §§ 2 and 1957 (Counts Fourteen through Nineteen). The
indictment also provided notice of forfeiture. On January 18,
2011, the case against Aldridge and his codefendants proceeded to
trial.[2] On January 26, 2011, the jury convicted Aldridge on all
counts.[3] Aldridge was represented by counsel at trial but has
since opted to proceed pro se.

## II. **Motion to Dismiss**

Aldridge "moves this Court to exercise its supervisory power
to Dismiss the Indictment . . . based on *fundamental error*."[4]
Aldridge explains that his

> Fifth Amendment right to Due Process was violated when
> Special Agent Robert McCallum committed perjury before
> the grand jury and Assistant United States Attorney
> Jennifer Lowery committed subornation of perjury and
> prosecutorial misconduct before the grand jury and at
> trial.[5]

Aldridge also argues that the indictment is subject to dismissal
due to pre-indictment delay, and he seeks an evidentiary hearing.

-----

[2]Minute Entry for First Day of Jury Trial, Docket Entry
No. 78.

[3]Jury Verdict, Docket Entry No. 91.

[4]Motion to Dismiss Indictment and Request for Evidentiary
Hearing and Oral Argument (Motion to Dismiss), Docket Entry
No. 119, p. 1.

[5]Id.

## A.    Standard of Review

"The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." United States v. Mechanik, 106 S.Ct. 938, 944 (1986) (O'Connor, J., concurring). "[D]ismissal is appropriate only when a violation has impaired the substantial rights of the accused." Id. (citing Fed. R. Crim. P. 52). In Bank of Nova Scotia v. United States, 108 S.Ct. 2369, 2374 (1988), the Supreme Court held that a court, invoking its supervisory power, may not dismiss an indictment absent a showing of prejudice. In cases where the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, prejudice is presumed. See Vasquez v. Hillery, 106 S.Ct. 617, 622-23 (1986) (racial discrimination in selection of grand jury); Ballard v. United States, 67 S.Ct. 261, 265 (1946) (exclusion of women from grand jury panel). In most cases the harmless error standard requires an examination of "the alleged errors to assess their influence, if any, on the grand jury's decision to indict in the factual context of the case[]." Bank of Nova Scotia, 108 S.Ct. at 2375. In cases such as this that have already proceeded to trial, the Supreme Court and the Fifth Circuit have held that guilty verdicts by a petit jury at trial render grand jury errors harmless because petit juries must apply a higher standard of guilt to convict than grand

juries must employ to indict. See Mechanik, 106 S.Ct. at 941 (holding that a guilty verdict at the conclusion of a jury trial rendered harmless a violation of Federal Rule of Criminal Procedure 6(d), which allows only one witness at a time to appear before a grand jury); United States v. Dentler, 492 F.3d 306, 311 (5th Cir. 2007) (courts may consider "the petit jury's unanimous findings—which [are considered] to be, at a minimum, persuasive evidence of how a grand jury would find"). See also United States v. Castro-Cuellar, 95 F.3d 47 (5th Cir. 1996) (per curiam) (prosecutor's presentation of hearsay evidence and expressions of opinion as to the defendant's guilt before the grand jury deemed harmless after petit jury returned guilty verdict). The Fifth Circuit has explained that

> [a]fter indictment, the judiciary's role in policing the credibility of witnesses before a grand jury is minimal. It is true that we have authority to enforce the Grand Jury Clause by ensuring that grand juries act independently from the executive. We may also, and indeed on occasion we must, use our supervisory power to safeguard the integrity of the grand jury process. The Supreme Court has, for example, recognized that a district court may use its supervisory power "to dismiss an indictment because of misconduct before the jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" The Supreme Court has also recognized that the supervisory power of Article III judges should be used "to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct."

-4-

United States v. Strouse, 286 F.3d 767, 771-72 (5th Cir. 2002).
(citations omitted)  In Strouse the Fifth Circuit held that
"perjury before the grand jury that was not knowingly sponsored by
the government may not form the basis for a district court's
dismissal of an indictment under its supervisory power." Id. at
772.  The court explained further that

> [o]ur limit today of the use of our supervisory power is
> consistent with our treatment of the repercussions of
> perjury before a petit jury.  Before a petit jury, the
> rule in this circuit is that "due process is not
> implicated by the prosecution's introduction or allowance
> of false or perjured testimony unless the prosecution
> actually knows or believes the testimony to be false or
> perjured."  We see little sense in a rule which would
> provide criminal defendants greater protection before the
> grand jury than defendants have at trial, where the use
> of perjured testimony arguably poses a greater threat,
> despite the defendant's opportunity at trial to confront
> the untruths.  Finally, as the government aptly notes, a
> rule allowing dismissal of an indictment without a
> showing of government misconduct would open the door to
> attacks on grand jury evidence for which there are large
> incentives including discovery by the accused.   The
> result would be the sort of "interminable delay" against
> which the Supreme Court long ago warned in the context of
> attacks on grand jury proceedings.

Id. at 776.


**B.  Analysis**

   1.   Special Agent McCallum's Alleged Perjury

      Aldridge contends that the indictment is subject to dismissal
because it was based on the false grand jury testimony outlined in

-5-

the text of his motion to dismiss.[6]  Aldridge alleges that Special

Agent McCallum and AUSA Lowery knew the testimony was false because

they "had the witness interviews of the parties involved and knew

that no conspiracy existed."[7]  Aldridge explains that

> [t]he very foundation of the scheme was based on
> fabricated testimony provided by SA McCallum and AUSA
> Lowery.  SA McCallum and AUSA Lowery knew of the false
> nature of the allegations at the time that [McCallum]
> testified before the grand jury.  When AUSA Lowery asked
> him to describe the scheme, initially he was vague in his
> response, so AUSA Lowery narrowed her question and asked
> specifically, Q. "Did Vincent and Tori Aldridge—were they
> the ones that were looking for properties to — for
> developers such as Gilbert Isgar?"  . . .
>
> A. SA McCallum answered "Yes, yes they were." . .
>
> SA McCallum admitted in court that he misled the
> grand jury concerning this issue.  SA McCallum went
> further to mislead the grand jury by stating "Mr. Isgar
> was approached about selling his properties to these
> individuals [Vincent and Tori Aldridge] and he agreed to
> inflate the sales price of his properties."  He stated
> that "Gil Isgar was going to sell them [the properties]
> for $300,000 and the price was raised to approximately
> $360,000."  This is another example of SA McCallum
> committing perjury before the grand jury.  The contracts
> that were sent to defendant's office had sales prices
> ranging from $366,000 to $345,000.  The prices were set
> by the real estate agents with whom the defendant had no
> affiliation.  Furthermore, SA McCallum knew that those
> initial contracts did not close and on subsequent
> transaction in most instances the price was lowered.
>
> So when Agent McCallum further stated that, "And
> then Vincent Aldridge and Tori Aldridge recruited
> individuals to purchase the properties. . ." . . . He
> knew this was false.  There was no evidence to support
> this bold assertion before the grand jury.  The witness

---

[6]Motion to Dismiss, Docket Entry No. 119, p. 4.

[7]Id. at 7.

-6-

testimony at trial and the evidence suggest otherwise. Agent McCallum committed perjury before the grand jury.

. . .

Since defendant recruited neither the builder nor the borrowers, then no scheme for conspiracy exists, as alleged by the government.[8]

Aldridge argues that "the perjury formed the foundation of the indictment. If the perjury was stricken the indictment would be fatally amended,"[9] and that "[i]f SA McCallum and AUSA Lowery had presented the information per their investigation free from perjury and misconduct, it is most likely an indictment would have not been returned."[10]

It is a violation of 18 U.S.C. § 1623(a) to knowingly make a material false statement before a grand jury. Nevertheless, perjury before a grand jury that does not prejudice a defendant, and was "not knowingly sponsored by the government may not form the basis for a district court's dismissal of an indictment under its supervisory power." Strouse, 286 F.3d at 772. The McCallum testimony that Aldridge contends was perjured does not provide any basis on which to dismiss the indictment because Aldridge has not cited any plausible evidence showing that McCallum's grand jury testimony was false, that McCallum's grand jury testimony

---

[8] Id. at 7-9.

[9] Id. at 13.

[10] Id. at 29.

prejudiced him, or that AUSA Lowery knew that McCallum's grand jury testimony was false.

        (a)   No Plausible Evidence McCallum Testified Falsely

       Aldridge's contention that McCallum testified falsely before the grand jury because he "had the witness interviews of the parties involved and knew that no conspiracy existed,"[11] has no merit.   Aldridge acknowledges that witnesses at trial gave testimony that contradicts his contention that McCallum testified falsely before the grand jury.  For example, Aldrige contends that McCallum committed perjury when he testified that Aldridge and his co-conspirators recruited buyers, but acknowledges that at least one of the buyers, Lyn King, testified otherwise at trial.[12] Aldridge asserts that Lyn King's trial testimony was not credible, but cites no evidence in support of this assertion.  In addition, Aldridge's characterization of McCallum's testimony before the grand jury is not always accurate.  For example, Aldridge contends that McCallum falsely testified that the buyers signed "most" — as opposed to all — closing documents in an intentional effort to mislead the grand jurors into thinking that Aldridge "forged some

---

[11] Id. at 7.

[12] Id. at 14 and 17.

-8-

of the documents."[13] But immediately after the question on this
issue posed by a grand juror that Aldridge contends McCallum
answered falsely, AUSA Lowery asked a follow-up question that
allowed McCallum to clarify that the closing documents were, in
fact, signed by the buyers:

Q. Through the actions — the buyers did sign off on
the closing documents; is that correct?

A. Yes.[14]

Aldridge's contention that McCallum falsely testified that Aldridge
conspired with the builder to inflate the sales prices of the
mortgaged properties exemplifies a similar inaccuracy. Aldridge
argues that McCallum's grand jury testimony was false because the
actual sales prices were set by real estate brokers, supported by
appraisals, and oftentimes lower than the amounts shown on draft
contracts.[15] But Aldridge does not — and indeed cannot — dispute
that the actual sales prices were high enough for the builder to
pay Aldridge kick backs that Aldridge deposited into his bank
account and used to pay buyers for their participation in the
scheme.

---

[13]Id. at 11.

[14]Grand Jury Testimony attached to Motion to Dismiss, p. 32.

[15]Motion to Dismiss, Docket Entry No. 119, pp. 8 and 10-11.

(b) No Evidence of Prejudice

Aldridge's contention that the indictment would be fatally amended if McCallum's alleged "perjury was stricken from the indictment"[16] has no merit. Aldridge contends that McCallum testified falsely when he told the grand jury that Aldridge and his wife recruited the builder, and that "McCallum admitted in court that he mislead the grand jury concerning this issue."[17] But McCallum was cross-examined at trial about the discrepancy between his grand jury testimony that Aldridge and his wife recruited the builder, and his trial testimony that Aldridge and his wife did not recruit the builder, and despite such cross-examination, the jury found Aldridge guilty as charged on all counts beyond a reasonable doubt.[18] In such cases, false testimony presented to the grand jury is deemed harmless and non-prejudicial. See United States v. Agu, 245 F.3d 791 (5th Cir. 2000), cert. denied, 121 S.Ct. 1672 (2001)(Table, text available in Westlaw)(citing Mechanik, 106 S.Ct. at 941) (dismissal of the indictment was unwarranted where allegedly false grand jury testimony was exposed to the petit jury at trial and despite this exposure the petit jury found the defendant guilty beyond a reasonable doubt).

---

[16]Id. at 13.

[17]Id. at 8.

[18]United States' Response to Defendant Vincent Aldridge's Motion for Dismissal (Response to Motion for Dismissal), Docket Entry No. 121, pp. 11-13.

-10-

Moreover, McCallum testified to many acts committed by Aldridge other than the acts about which Aldridge contends McCallum testified falsely.  For example, McCallum testified that Aldridge knowingly caused false and incomplete information to be transmitted to lenders in order to secure the mortgages alleged in the indictment, that the lenders relied on this false and incomplete information to make loans, that Aldridge did not disclose to the lenders the amount of money that was disbursed to him and deposited into his bank account, and that Aldridge used the money deposited in his bank account to pay buyers for their participation in the scheme to obtain the mortgages.  Because even without McCallum's allegedly false testimony, any rational grand jury would have charged Aldridge with the crimes for which the petit jury ultimately found him guilty beyond a reasonable doubt, the court is not persuaded that McCallum's allegedly false grand jury testimony either influenced the grand jury's decision to indict Aldridge or forced Aldridge to defend charges absent reasonable cause to believe him guilty.  See United States v. Robinson, 367 F.3d 278, 288 (5th Cir.), cert. denied, 125 S.Ct. 623 (2004)("[O]ur inquiry focuses solely on the question whether, on the basis of the evidence that would have been available to the grand jury, any rational grand jury presented with a proper indictment would have charged [the defendant with] the offense in question."); Dentler,

-11-

492 F.3d at 311 ("the petit jury's unanimous findings . . . [are],
at a minimum, persuasive evidence of how a grand jury would find").

> (c)   No  Evidence  the  Government  Knowingly  Presented
>       Perjured Testimony to the Grand Jury

Even if McCallum did testify falsely before the grand jury,
Aldridge has not cited any evidence showing that AUSA Lowery knew
that McCallum testified falsely before the grand jury, and absent
such  evidence  the  court  has  no  basis  on  which  to  dismiss  the
indictment.   See Strouse, 286 F.3d at 772 ("perjury before the
grand jury that was not knowingly sponsored by the government may
not  form  the  basis  for  a  district  court's  dismissal  of  an
indictment under its supervisory power").   Aldridge's assertion
that Lowery knew the testimony was false because she "had the
witness  interviews  of  the  parties  involved  and  knew  that  no
conspiracy existed,"[19] is not only conclusory but — as Aldridge
acknowledges  —  contradicted  both  by  the  testimony  of  trial
witnesses such as Lyn King,[20] and by the petit jury's verdict of
guilt beyond a reasonable doubt on all counts of the indictment.

---

[19]Motion to Dismiss, Docket Entry No. 119, p. 7.

[20]Id. at 14 and 17.

-12-

2.   <u>AUSA Lowery's Alleged Prosecutorial Misconduct</u>

(a)   No Evidence of Misconduct Before the Grand Jury

Aldridge argues that the indictment must be dismissed because it was based entirely on hearsay testimony.   Although Aldridge concedes this is permissible, he argues that the grand jury was not told it was getting hearsay or that it had the right to hear first-hand testimony.[21]   These arguments are foreclosed by the Supreme Court's decisions in <u>Costello v. United States</u>, 76 S.Ct. 406 (1956), and <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992).

In <u>Costello</u>, 76 S.Ct. at 409, the Supreme Court was asked to "exercise its power to supervise the administration of justice in federal courts and establish a rule that permitted defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence."   In rejecting this request the Supreme Court explained that such a rule

> would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules.   Neither justice nor the concept of a fair trial requires such a change.   In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict.   Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

<u>Id.</u>   Thus, under <u>Costello</u> an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.   <u>Id.</u> at 408-09.   In

---

[21]<u>Id.</u> at 6 and 12-13.

-13-

Williams, 112 S.Ct. at 1735, the Supreme Court reaffirmed its holding in Costello and held that a district court may not dismiss an otherwise valid indictment because the government failed to disclose exculpatory evidence to the grand jury. The Fifth Circuit has followed this reasoning on many occasions. See United States v. Cruz, 478 F.2d 408, 410 (5th Cir.), cert. denied, 94 S.Ct. 259 (1973); United States v. Cathey, 591 F.2d 268, 273 & n. 5 (5th Cir. 1979).

Citing United States v. Estepa, 471 F.2d 1132, 1136-37 (2d Cir. 1972), Aldridge attempts to distinguish Costello and its progeny by arguing that the Second Circuit has developed a rule pursuant to which an indictment based on hearsay is invalid when (1) non-hearsay evidence was readily available; (2) the grand jury was misled into believing it was hearing direct testimony instead of hearsay; and (3) there is a high probability that had the grand jury heard the eye witnesses it would not have indicted.[22] Aldridge's reliance on the "best evidence" rule applied in Estepa is misplaced because that rule has never been considered a constitutional requirement even by the Second Circuit, see United States v. Jacobs, 547 F.2d 772, 778 (2d Cir. 1976), cert. dismissed, 98 S.Ct. 1873 (1978), and because in Williams, 112 S.Ct. at 1746 n. 8, the Supreme Court expressly disapproved Estepa and cast doubt on the continuing validity of the rule applied there.

_____

[22]Id. at 5-6.

-14-

In Williams, 112 S.Ct. at 1742, the Supreme Court rejected a rule requiring prosecutors to disclose exculpatory evidence to the grand jury. The Supreme Court reasoned that "[b]ecause the grand jury is an institution separate from the courts, over whose functioning the courts do not preside," no general "'supervisory' judicial authority exists" over grand jury proceedings. Citing Costello, 76 S.Ct. at 409, in which the Court reasoned that "[i]t would run counter to the whole history of the grand jury institution" to permit an indictment to be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury," and Bank of Nova Scotia, in which the Court reasoned that "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment," the Williams Court explained that

[i]t would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading."

112 S.Ct. at 1746. The Court offered Estepa as an example of a case in which a challenge to the quality of the evidence was styled as a challenge to the prosecutor's presentation. Id. at 1746 n. 8 (explaining that in Estepa, 471 F.2d at 1136-37, the Second Circuit held that the "prosecutor should not introduce hearsay evidence before a grand jury when direct evidence is available"). The Court

-15-

concluded that "courts have no authority to prescribe . . . a duty
[to disclose exculpatory evidence to the grand jury] pursuant to
their inherent supervisory authority over their own proceedings."
Id. at 1746.  Thus, Aldridge's argument that the indictment should
be dismissed because the prosecutor presented only hearsay evidence
to the grand jury fails because hearsay testimony is an acceptable
form of evidence in grand jury proceedings.  See Cruz, 478 F.2d at
411 ("While the presentation of hearsay testimony of an
investigating officer in lieu of readily available testimony by
direct witnesses is by no means a preferred procedure, it is
neither unconstitutional nor inherently wrong.").  And even if the
test from Estepa survives Williams, Aldridge's argument still fails
because Aldridge is unable to satisfy the second or the third prong
of that test.

The second prong of the test applied in Estepa, 471 F.2d at
1136-37, requires the defendant to show that the grand jury was
misled into believing it was hearing direct testimony instead of
hearsay.  In this case the grand jury was informed that McCallum
was a special agent of the FBI who had investigated the case and
was testifying about information gained during the course of his
investigation.[23]  Aldridge has not argued and, indeed, cannot show

---

[23]Grand Jury Testimony of Robert McCallum attached to Motion
to Dismiss, Docket Entry No. 119, pp. 3-5.

-16-

that the grand jury could possibly have been misled to believe that McCallum was providing direct testimony as opposed to hearsay.

The third prong of the test applied in Estepa, 471 F.2d at 1137, requires the defendant to show that there is a high probability that had the grand jury heard the eye witnesses it would not have indicted. Aldridge has not cited any evidence indicating that the result of the grand jury proceeding would have been different had the witnesses themselves testified instead of Special Agent McCallum. The fact that after hearing the testimony of the witnesses at trial, the petit jury found Aldridge guilty beyond a reasonable doubt of all counts charged in the indictment forecloses this argument and establishes conclusively that the fact Special Agent McCallum provided hearsay testimony before the grand jury was of no consequence. To the extent that Estepa, 471 F.2d at 1132, suggests a contrary result, Estepa has been superseded by the Supreme Court's decision in Williams, 112 S.Ct. at 1735.

        (b)   No Evidence of Misconduct Before the Petit Jury

Aldridge alleges that AUSA Lowery committed misconduct before the petit jury by (1) falsely representing that Aldridge's case was part of a "greater scheme" or "greater conspiracy;" (2) providing an extensive list of non-relevant witnesses that the government had no intention of calling to testify; (3) eliciting perjured testimony from buyers Shawn Stevens, Michele Shields, and Lyn King

about contracts that never closed; (4) eliciting perjured testimony from IRS Agent Lisa Deimert about the balance in Aldridge's IOLTA account; and (5) making an improper closing argument based on statements that Aldridge allegedly made to Special Agent McCallum.[24] Aldridge argues that these acts of alleged misconduct biased the petit jury and deprived him of a fair trial.  The acts of alleged misconduct before the petit jury do not provide any basis on which to dismiss the indictment because Aldridge has not cited any evidence showing that these acts constitute misconduct.  Aldridge has not cited evidence showing that any of the trial testimony was false or that AUSA Lowery knew that any of the trial testimony was false.  And even assuming arguendo that the trial testimony about which Aldridge complains was false, Aldridge has failed to cite any legal authority that false testimony at trial would warrant dismissal of the indictment.  Accordingly, the court concludes that Aldridge has failed to establish that any prosecutorial misconduct occurred before the petit jury, or that the indictment should be dismissed for this reason.

### 3.   Pre-Indictment Delay

Asserting that "[t]he prosecution delayed seeking indictment for 60 months [and that] AUSA Lowery went to the grand jury the day

---

[24]Motion to Dismiss, Docket Entry No. 119, pp. 22-25.

. . . the statute of limitations [was] to expire,"[25] Aldridge argues that "[t]he delay not only gave the government a tactical advantage but also caused substantial prejudice to [his] right to a fair trial."[26]   Where the indictment is not barred by the statute of limitations, dismissal for pre-indictment delay requires a showing that the delay not only caused the accused substantial, actual prejudice, but also that the prosecution purposely delayed the indictment to gain tactical advantage over the accused in the contemplated prosecution, or for some other impermissible bad faith purpose.   See United States v. Crouch, 84 F.3d 1497, 1500, 1514 (5th Cir. 1996) (en banc), cert. denied, 117 S.Ct. 736 (1997).   See also United States v. Avants, 367 F.3d 433, 441 (5th Cir. 2004)(defendant required to prove both bad faith and prejudice). An "[i]ntentional delay for the purpose of gaining tactical advantage would include delay for the purpose of rendering unavailable evidence favorable to the defense or which would tend to undercut the government's case." Crouch, 84 F.3d at 1514 n. 23. "To establish prejudice, [Aldridge] must offer more than mere speculation of lost witnesses, faded memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources." United States v. Gulley, 526 F.3d 809, 820 (5th Cir. 2008), cert.

---

[25]Id. at 3.

[26]Id. at 4.

-19-

denid, 129 S.Ct. 159 (2008) (citing <u>Crouch</u>, 84 F.3d at 1515).  "The
burden is on the defendant to prove both prongs of the test."  <u>Id.</u>
(citing <u>Avants</u>, 367 F.3d at 441).

     (a)   Tactical Advantage

Asserting that the government presented the case to the grand
jury on the day the statute of limitations was to expire, Aldridge
argues that the timing of the indictment "was calculated to gain
tactical advantage as there is no plausible reason for the delay."[27]
Asserting that the government's intent was "to illicit perjured
testimony from SA McCallum in order to obtain an indictment,"[28]
Aldridge explains that the government delayed presenting the case
to the grand jury because under <u>United States v. Basurto</u>, 497 F.2d
781 (9th Cir. 1974), the government would have been obligated to
purge the proceedings of perjury unless the statute of limitations
had run or jeopardy had attached.[29]

Citing 18 U.S.C. § 3282(a), the government responds that "the
indictment was not presented the day the statute of limitations
would have run."[30]  This section of the United States Code allows

---

[27]<u>Id.</u> at 3.

[28]<u>Id.</u>

[29]<u>Id.</u> at 4.

[30]United States' Response to Defendant Vincent Aldridge's
Motion for Dismissal (Response to Motion for Dismissal), Docket
(continued...)

-20-

non-capital prosecutions to proceed, and not be barred by a statute of limitations, if the "indictment is found or the information is instituted within five years next after such offense shall have been committed."   18 U.S.C. § 3282(a).

The indictment in this case was presented to the grand jury, and filed with this court on March 25, 2010.[31]  While the Indictment alleges that one of the overt acts in furtherance of the conspiracy charged in Count One occurred "[o]n or about March 22, 2005 and March 25, 2005,"[32] the conspiracy in Count One is alleged to have existed "[f]rom in or about August 2004 and continuing through on or about June 22, 2005,"[33] and the last overt act allegedly occurred on May 12, 2005.[34]  The statute of limitations for the conspiracy alleged in Count One would thus not have expired until May 12, 2010, approximately a month and a half after the date on which this case was presented to the grand jury.  Moreover, the latest dates on the other substantive offenses with which Aldridge was charged

---

[30] (...continued)
Entry No. 121, p. 4.

[31] See Testimony of Robert McCallum, March 25, 2010, attached to Defendant's Motion to Dismiss, Docket Entry No. 119; and Indictment, Docket Entry No. 1.

[32] Indictment, Docket Entry No. 1, p. 6.

[33] Id. at 3.

[34] Indictment, Docket Entry No. 1, p. 15 (overt act number 31).

-21-

also allegedly occurred in May of 2005.[35]  Accordingly, Aldridge's
assertion that the government delayed presenting this case to the
grand jury until the day before the statute of limitations expired
has no merit.   Aldridge's contention that the Ninth Circuit's
decision in Basurto, 497 F.2d at 781, motivated the government to
delay presenting this case to the grand jury also has no merit.

     In Basurto a co-conspirator turned informant testified falsely
about the defendant's participation in a scheme to import marijuana
prior to 1971.   This testimony was material because the law
applicable to this offense changed significantly in 1970.
Specifically, those convicted of offenses occurring prior to 1971
were subject to a mandatory minimum sentence of five years, while
those convicted under the new statute were not subject to such
inflexible sentencing.  No other witness testified before the grand
jury.   Upon learning of the witness's perjured testimony, the
prosecutor immediately informed defense counsel, but did not inform
the grand jury or the court.   During his opening statement at
trial, the prosecutor mentioned that some of the witness's grand
jury testimony was false.  No other witness testified at trial.  On
appeal, the Ninth Circuit reversed the defendant's conviction
explaining that

     [t]he   Due Process Clause of the Fifth Amendment is
     violated when a defendant has to stand trial on an

―――――――――――――

[35]Id. at 17 (Counts Eleven and Twelve on May 6, 2005), and 19-
20 (Counts Eighteen and Nineteen on May 9, 2005).

-22-

indictment which the government knows is based partially
on perjured testimony, when the perjured testimony is
material, and when jeopardy has not attached.  Whenever
the prosecutor learns of any perjury committed before the
grand jury, he is under a duty to immediately inform the
court and opposing counsel and, if the perjury may be
material, also the grand jury in order that appropriate
action may be taken.

Basurto, 497 F.2d at 785-86.  The Ninth Circuit's decision in

Basurto could not have motivated the government to delay presenting

this case to the grand jury until the day before the statute of

limitations expired in order to obtain a tactical advantage because

(1) the Basurto decision did not make the government's duty to

disclose knowledge of perjured grand jury testimony contingent upon

the statute of limitations, and (2) even the Ninth Circuit no

longer follows Basurto.

Aldridge's contention that under Basurto the government would

have been obligated to purge the proceedings of perjury unless the

statute of limitations had run, can only result from a misreading

of Basurto's observation that the government would not be

prejudiced by the disclosure requirement imposed in that case

because the statute of limitation had not run and jeopardy had not

attached.  497 F.2d at 785.  The Basurto court did not hold that

the government's duty to disclose perjured grand jury testimony

expires together with the statute of limitations.  Moreover, in

United States v. Bracy, 566 F.2d 649, 655 (9th Cir. 1977), stay

denied, 98 S.Ct. 1171 (Rehnquist, Circuit Justice 1978), cert.

denied, 99 S.Ct. 79 (1978), the Ninth Circuit moved away from its

-23-

holding in Basurto by affirming the denial of a pretrial motion to dismiss an indictment based in part on perjured grand jury testimony.   See Cathey, 591 F.2d 271-72 (recognizing that "[a] subsequent Ninth Circuit opinion, U[nited] S[tates] v. Bracy, 566 F.2d 649 (9th Cir, 1977), cert. denied, 99 S.Ct. 79 (1978), has not only cut back on the reach of Basurto but has also questioned its continuing validity.").   Moreover, to the extent that the Ninth Circuit's holding in Basurto mandates dismissal of an indictment without a showing of prejudice, that holding does not survive Bank of Nova Scotia, 108 S.Ct. at 2369 (holding that a district court may not invoke its supervisory power to dismiss an indictment because of non-constitutional errors in grand jury proceedings unless the errors prejudice the defendants).   Accordingly, the court is not persuaded that the government delayed presenting this case to the grand jury in order to obtain a tactical advantage over Aldridge.

### (b)   Prejudice

Aldridge argues that "[t]he delay not only gave the government a tactical advantage but also caused substantial prejudice to [his] right to a fair trial."[36]  Citing United States v. Marion, 92 S.Ct. 455 (1971), and United States v. West, 58 F.3d 133 (5th Cir. 1995), Aldridge argues that the pre-indictment delay prejudiced him at

---

[36]Motion to Dismiss, Docket Entry No. 119, p. 4.

trial because the delay prevented him from finding witnesses.

Aldridge explains that

> a key witness necessary to his defense was no longer
> available due to his fleeing the country. The witness,
> Anstone Nguyenle, was the mortgage broker and the only
> person who had the ability to obtain a loan from the
> lenders. It was established at trial that neither
> defendant was a licensed mortgage broker or loan officer.
> Neither defendant had the ability to obtain a mortgage
> loan from the lenders which makes the alleged government
> scheme illogical. It was further established that the
> lenders only issue loans to their broker fiduciary. The
> government presented documents with the signature of
> defendant Tori Aldridge as the broker. Due to the 60
> month delay Mr. Nguyenle had already left the country.
> His testimony was necessary to the defense of the
> defendant. His testimony would have been exculpatory in
> nature as he would have testified that he signed the loan
> documents per the lenders instructions and as a condition
> precedent to funding of the loans. Further he would have
> testified that he calculated all of the loan-to-value
> ratios, directed loan applications to the lenders he
> chose, and selected the loan programs, or products. Also
> he would have testified that it was him and not the
> defendants who originated the loans. SA McCallum
> testified at trial that he did not try to contact him
> until one month prior to trial and traced his last known
> presence to Chicago. The delay further complicated the
> matter due to the lenders going out of business;
> consequently key witnesses who actually worked on the
> loans could no longer be located.[37]

In Marion, 92 S.Ct. at 465, the Supreme Court held that the

due process clause only requires the dismissal of an indictment

because of pre-indictment delay when the delay causes "substantial

prejudice" to the defense and the delay is an "intentional device

to gain tactical advantage over the accused." The Court explained

that the primary protection against pre-indictment delay is the

---

[37] Id.

statute of limitations.  Id.  In West, 58 F.3d at 136, the defendant acknowledged that he was indicted within the limitations period, but argued that the government's delay in initiating the prosecution against him caused substantial prejudice to his defense in violation of the Fifth Amendment because one witness was murdered, other witnesses' memories had faded, and evidence had been lost.  Stating that West offered no evidence that the missing witnesses' testimony was exculpatory in nature or that it would have aided his defense, the Fifth Circuit concluded that West failed to meet his burden of establishing that he suffered actual prejudice because of the government's delay in pursuing the indictment.  The Fifth Circuit explained that vague assertions of lost witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre-indictment delay.

This case is very similar to West because Aldridge alleges that witnesses were missing, but with one exception — Anstone Nguyenle — Aldridge has neither identified the missing witnesses, nor made any showing that the testimony they would have provided would have been exculpatory or otherwise helpful to his defense. Although Aldridge contends that Nguyenle's testimony would have shown that Nguyenle was the mortgage broker and, therefore, the only person who had the ability to originate loans from the lenders, Aldridge acknowledges that the loans involved were all

-26-

funded without Nguyenle's signature.[38]   Even if, as Aldridge
contends, Nguyenle would have testified that he alone had the
ability to originate loans from the lenders, this evidence would
only have proved that the fraudulent scheme could not have been
conducted without Nguyenle's participation; it would not have aided
Aldridge's defense.   Moreover, Aldridge has not shown that the
testimony Nguynele and/or any other missing witnesses would
allegedly have provided could not have been obtained from another
source.   Even though the lenders were out of business by the time
Aldridge was indicted, the government obtained the loan files from
the lenders and provided them to the defense, thereby minimizing
any prejudice occasioned by missing witnesses.   The court thus
concludes that any prejudice Aldridge sustained was not
sufficiently substantial to deprive him of an opportunity to
present his defense to the conduct alleged in the indictment, and
that the government's delay in presenting this case to the grand
jury neither caused Aldridge to suffer substantial prejudice nor
denied him due process or a fair trial.

## C.   Aldridge's Evidentiary Hearing Request

Aldridge seeks a hearing regarding his motion to dismiss the
indictment but fails to cite any conflict in the evidence that if
resolved in his favor would result in a finding either that the

---

[38]Id. at 3.

government abused the grand jury process or that the government's abuse of the grand jury process prejudiced Aldridge.

A criminal defendant who seeks to obtain dismissal of an indictment bears a heavy burden in attempting to justify such relief. See In re Grand Jury Investigation, T. Bertram Lance v. United States Department of Justice, 610 F.2d 202, 219 (5th Cir. 1980). In this case that heavy burden requires Aldridge to show that the government abused the grand jury process and that the abuse prejudiced him. See Bank of Nova Scotia, 108 S.Ct. at 2369. Aldridge has failed to bear that heavy burden in this case. The court has carefully examined the transcripts of the grand jury proceedings, and found nothing to indicate that the grand jury process that led to Aldridge's indictment was affected by false testimony, or governmental misconduct.

For the reasons explained in § II.B.1 above, the court has already concluded that Special Agent McCallum's allegedly false testimony did not prejudice Aldridge because even without that allegedly false testimony, any rational grand jury presented with the indictment in this case would have charged Aldridge with the crimes for which the petit jury ultimately found him guilty beyond a reasonable doubt. Review of the grand jury transcript and the existing evidentiary record persuades the court that an evidentiary hearing on Aldridge's motion to dismiss is not necessary because Aldridge has failed to make even a prima facie showing either that

-28-

the government abused the grand jury process or that the presentation and/or delay of presentation of this case to the grand jury prejudiced Aldridge. The factual discrepancies alleged by Aldridge, to the extent that they exist, do not call into question the bases on which the court has relied to conclude that Aldridge has failed to point to any credible evidence that (1) McCallum testified falsely before the grand jury, (2) McCallum's allegedly false grand jury testimony caused Aldridge to be indicted, or (3) AUSA Lowery knew that McCallum testified falsely to the grand jury. Aldridge's motion is based on speculation that this prosecution was in some way motivated by the government's frustration over its inability to tie Aldridge to a mortgage fraud scheme orchestrated by Alvin Eiland. Aldridge comes closest to adducing some credible basis for arguing grand jury perjury when he complains that McCallum told the grand jury that Aldridge and his co-conspirators recruited the builder — Gilbert Barry Isgar — to participate in the scheme. But any prejudice caused by this testimony was rendered harmless at trial when Aldridge's attorney cross-examined McCallum on this issue, and despite that cross-examination the petit jury found Aldridge guilty beyond a reasonable doubt on all charges alleged in the indictment. See Agu, 245 F.3d at 791. Aldridge's conclusory assertions of governmental misconduct do not raise any fact issues that require the court to conduct an evidentiary hearing before denying his

-29-

motion to dismiss.  See Gulley, 526 F.3d at 820, ("In this case, there was no reason to hold any hearing because the district court found that Gulley suffered no prejudice from the delay."). Accordingly, Aldridge's request for an evidentiary hearing and oral argument will be denied.


## III. __Motion to Produce Work Product for In Camera Inspection__

Citing the Jencks Act, 18 U.S.C. § 3500, and Brady v. Maryland, 83 S.Ct. 1194 (1970), Aldridge "moves this Court to perform an incamera inspection of the government's work product."[39] Aldridge explains that he "firmly believes that a[n] incamera inspection would reveal exculpatory evidence and confirm irregularities in the grand jury proceeding."[40]  Aldridge seeks production

> for the court's inspection all interoffice correspondence concerning [this case] between Assistant United States Attorneys Lowery, Buchanan, and Special Agents Diemert and McCallum, or any and all parties involved with this matter to include all handwritten notes pertaining to interviews of Shawn Stevens, Lyn King, Alvin Eiland, Daniel Gustafson, and Staffon Isaacs . . . and all notes and correspondence used in preparation of grand jury testimony.[41]

Aldridge explains that he

---

[39]Motion for Government to Produce Work Product to Court for In camera Inspection (Motion to Produce), Docket Entry No. 118, p. 1.

[40]Id.

[41]Id.

believes that the handwritten notes will confirm that the
prosecutor and the special agents involved were aware
that the witness interviews did not link the defendant to
a greater scheme.   The defendant believes there will be
notes confirming that they interviewed Lyn King, Shawn
Stevens,  Staffon  Isaacs,  Daniel  Gustafson  and  Alvin
Eiland with the specific purpose of obtaining information
to  link  the  defendant  to  Alvin  Eiland's  scheme.    The
notes will prove that there was a decision on behalf of
the  government  to  misrepresent  the  facts,  once  their
interviews were concluded and there was no evidence to
support  that  defendant  recruited  the  builder  or  the
borrowers.       These     are     the     most     critical
misrepresentations that enabled the prosecution to obtain
an indictment and ultimate conviction.

. . . Variations  from  the  handwritten  notes,  the  typed
agent's summaries and the 302's will demonstrate these
inconsistencies, and support the issues of prosecutorial
misconduct, suborn perjury and perjury.[42]

Aldridge also seeks disclosure of other attempts to indict him.[43]

The government responds that Aldridge has already received the

grand jury testimony, and that on March 30, 2011, Aldridge was

advised in correspondence from AUSA Lowery that his case was only

presented to the grand jury on one occasion.[44]   The Government

contends that

[t]he  Defendant  was  provided  ample  discovery  which
included copies of all the lender and title files, bank
records,  and  copies  of  all  the  reports  of  interviews  of
the  witnesses  and  agents  in  the  case.    Prior  to  trial,
the  Defendant  was  provided  a  copy  of  the  grand  jury

---

[42]Id. at 2-3.

[43]Id. at 2.

[44]United  States'  Response  to  Defendant  Vincent  Aldridge's
Motion to Produce Work Product to Court for In Camera Inspection
(United  States'  Response  to  Motion  to  Produce),  Docket  Entry
No. 122, p. 3.

testimony of the witness who appeared before the grand
jury in his case.  Additionally, since the case agents
also testified in a related case, <u>United States v. Alvin
Eiland et al.</u>, H-09-699, the Defendant was also provided
the grand jury transcripts from that case.[45]

Acknowledging that <u>Brady</u> material covers exculpatory as well as
impeachment evidence, the government argues that it has complied
with its obligations under <u>Brady</u>, and should not be required to
disclose any additional material, including <u>inter alia</u>, the agents'
and/or assigned attorney's rough notes.

A defendant seeking an in camera inspection to determine
whether documents contain <u>Brady</u> material must make a plausible
showing that the documents sought will produce material evidence.
<u>United States v. Runyan</u>, 290 F.3d 223, 245 (5th Cir.), <u>cert.
denied</u>, 123 S.Ct. 137 (2002) (citing <u>United States v. Lowder</u>, 148
F.3d 548, 550-51 (5th Cir. 1998) (quoting <u>Pennsylvania v. Ritchie</u>,
107 S.Ct. 989 (1987)).  Evidence is material under <u>Brady</u> when there
is a reasonable probability that the outcome of the trial would
have been different if the suppressed evidence had been disclosed
to the defendant.  <u>Id.</u> (citing <u>United States v. Gonzales</u>, 121 F.3d
928, 946 (5th Cir. 1997) and <u>United States v. Bagley</u>, 105 S.Ct.
3375 (1985)).  To obtain production of a statement under the Jencks
Act, the defendant must make a preliminary showing that there is a
producible document.  <u>United States v. Edwards</u>, 702 F.2d 529, 531
(5th Cir. 1983).

---

[45]<u>Id.</u> at 2.

Aldridge does not contend that the information in the rough notes and government work product that he seeks would have changed the outcome of the trial.  Instead, Aldridge argues that the rough notes will show that the Special Agent McCallum and AUSA Lowery conspired to present false testimony to the grand jury.  Any argument that Aldridge is attempting to make that the government prejudiced him before the grand jury by suppressing evidence has no merit because the government is under no obligation to present exculpatory evidence to the grand jury.  See Williams, 112 S.Ct. at 1735 (holding that a district court may not dismiss an otherwise valid indictment because the government failed to disclose exculpatory evidence to the grand jury).  See also Cruz, 478 F.2d at 410; Cathey, 591 F.2d at 268.  Because the credibility of Special Agent McCallum was challenged on cross-examination at trial, even assuming that the documents sought contain impeachment evidence, there is no reasonable probability that had they been disclosed to the grand jury the result of the trial would have been different.  Because Aldridge has not demonstrated that the documents he seeks could plausibly contain material information that would have changed the outcome of the trial, the court concludes that Aldridge's motion for in camera inspection should be denied.

-33-

## IV. Conclusions and Order

For the reasons explained in § II, above, the court concludes that there is no need to conduct an evidentiary hearing before ruling on the motion to dismiss, and that the indictment is not subject to dismissal because Aldridge has not presented any plausible evidence (1) that Special Agent McCallum testified falsely before the grand jury, (2) that AUSA Lowery knowingly presenting perjured testimony to the grand jury, (3) that the government delayed presenting this case to the grand jury to gain a tactical advantage, or (4) that any delay in presenting this case to grand jury prejudiced Aldridge. Accordingly, Aldridge's Motion to Dismiss Indictment and Request for Evidentiary Hearing and Oral Argument, Docket Entry No. 119, is **DENIED.**

For the reasons explained in § III, above, Aldridge's Motion for Government to Produce Work Product to Court for In Camera Inspection, Docket Entry No. 118, is **DENIED.**

**SIGNED** at Houston, Texas, this _10th_ day of May, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-34-