IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | CRIMINAL NUMBER H-10-185-01 |
| VINCENT WALLACE ALDRIDGE | § | (CIVIL ACTION NO. H-14-3221) |
| | § | |
| and | § | |
| | § | CRIMINAL NUMBER H-10-185-02 |
| TORI ELYSE ALDRIDGE. | § | (CIVIL ACTION NO. H-14-3609) |

## MEMORANDUM OPINION AND ORDER

Pending before the court are Vincent Wallace Aldridge's and Tori Elyse Aldridge's Expedited Motion to Compel Government to Affirm or Deny Impropriety of Venue (Fed. R. Crim. P. 16[(a)(1)](F) & [(a)(1)](G)) ("Aldridges' Motion to Compel") (Docket Entry No. 346); Tori Aldridge's Expedited Motion for Partial Summary Judgment (Docket Entry No. 348); Tori Aldridge's Expedited Motion to Compel the Government to Confirm or Deny the Impropriety of Venue and Expedited Motion for Summary Judgment (Docket Entry No. 350); Vincent Wallace Aldridge's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 352); Vincent Aldridge's Request for Stay of Sentence and Immediate Release Pending § 2255 Review (Docket Entry No. 354); Vincent Aldridge's Motion for Summary Judgment, Immediate Release, or Bond Pending 28 U.S.C. § 2255 Determination (Docket Entry No. 360); Tori Elyse Aldridge's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 362); the Government's Response and Motion to Dismiss Vincent Aldridge's Motion Filed Under 28 U.S.C. § 2255 (Docket Entry No. 375); and the Government's Response and Motion to Dismiss Tori Aldridge's Motion Filed Under 28 U.S.C. § 2255 (Docket Entry No. 376). After careful consideration, the court concludes that the Aldridges' motions under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody should be denied, that the United States' motions to dismiss should be granted, and that the remaining motions should all be denied.

## I.   Factual and Procedural Background

### A.   Undisputed Facts

Vincent Aldridge's and Tori Aldridge's convictions arose out of a scheme to sell newly constructed townhouses in the Memorial Park area of Houston, Texas.  The townhouses at issue were in a development called "Maxie Village" built by Waterford Custom Homes. The Aldridges' co-defendant, Gilbert Barry Isgar, owned 50% of Waterford Custom Homes.  See United States v. Isgar, 739 F.3d 829, 833 (5th Cir.), cert. denied, 135 S. Ct. 123 (2014).

Also involved in the scheme were Alvin Eiland, a mortgage broker, and his employee, Gary Robinson.  Robinson assisted Vincent Aldridge in forming Superb Construction, which laundered proceeds from these transactions.  Both Eiland and Robinson pled guilty to

conspiracy to commit wire fraud and money laundering and were not parties to this case. Id. at 834.

Closings for the townhouses sold were conducted by First Southwestern Title Company (FSW), which was operated by the Aldridges in Houston, Texas, and for whom Vincent Aldridge was also an attorney doing business as Aldridge & Associates. The Aldridges were both authorized signers on Aldridge & Associates' Interest Only Lawyers Trust Account (IOLTA). Id.

The evidence at trial established that the Aldridges recruited three "straw purchasers" to buy eight of the townhomes. Vincent Aldridge purchased the ninth. The straw purchasers were individuals who wanted to invest in real estate and were told that they would receive $10,000 for each property they purchased; that they would not have to pay the mortgages because tenants would be found to lease the properties; and that after approximately one year the residences would be resold and the straw purchasers might then receive additional money. These straw purchasers provided the Aldridges with their respective names, social security numbers, and income information. The Aldridges then used these names and social security numbers, combined with falsified information about income, assets, and intent to use the property as a primary residence, to submit fraudulent loan applications to lenders. The false representations that each purchaser would be residing in the purchased home permitted the Aldridges to obtain 100% financing. Id. at 833-34.

Isgar inflated the sale price of the properties through falsified construction invoices and amendments to the sale contracts. The lenders approved loans to purchase the properties at the inflated practices. When the lenders wired the loan amounts to FSW, FSW made disbursements to Isgar as payment for the properties, which were disclosed to lenders on the settlement statement as required by the Department of Housing and Urban Development (HUD). Id. at 834. FSW also made other disbursements to Aldridge & Associates, as well as to Superb Construction, which were not disclosed on the HUD settlement statements.

The United States mail, including interstate commercial carriers, and wire communications were used to execute this scheme. Loan documents traveled across state lines by facsimile, mail, and e-mail. Loan proceeds were wire transferred from the lenders' banks outside of Texas to FSW's bank in Texas. Id.

B.   **Procedural Background**

On March 25, 2010, a grand jury in the Houston Division of the Southern District of Texas returned a nineteen-count indictment against Vincent Aldridge and Tori Aldridge (Docket Entry No. 1). The indictment charged the Aldridges with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1349 (Count 1), wire fraud and aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 2, 1343 (Counts 2-12), conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h)

-4-

(Count 13), and money laundering and aiding and abetting money laundering, in violation of 18 U.S.C. §§ 2, 1957 (Counts 14-19). The indictment also charged Isgar with conspiracy to commit mail and wire fraud and wire fraud (Counts 1-13). On January 18, 2011, the case proceeded to trial.[1] On January 26, 2011, the jury convicted the Aldridges and Isgar on all counts (Docket Entry No. 92).

On April 1, 2011, Vincent Aldridge, acting pro se, filed a Motion to Dismiss Indictment and Request for Evidentiary Hearing and Oral Argument ("Vincent Aldridge's Motion to Dismiss") (Docket Entry No. 119). On May 10, 2011, the court entered a Memorandum Opinion and Order denying Vincent Aldridge's Motion to Dismiss Indictment and Request for Evidentiary Hearing and Oral Argument (Docket Entry No. 135).

On July 22, 2011, the court sentenced Vincent Aldridge to 63 months' imprisonment on each count of conviction to be served concurrently, to be followed by three years of supervised release and payment of $891,000 in restitution and $1,900 in special assessments.[2] On July 26, 2011, the court entered a Judgment as to Vincent Aldridge (Docket Entry No. 207).

On October 21, 2011, Tori Elyse Aldridge filed Defendant's Memorandum of Law in Support of Sentencing and Motion for New Trial

---

[1]See Minute Entry for First Day of Jury Trial, Docket Entry No. 78.

[2]See Minute Entry for Sentencing held on 7/22/2011 for Vincent Wallace Aldridge.

-5-

or Evidentiary Hearing (Docket Entry No. 249).  On March 22, 2012, the court entered a Memorandum Opinion and Order (Docket Entry No. 279) denying Tori Elyse Aldridge's Motion for New Trial, and the court sentenced Tori Elyse Aldridge to 63 months' imprisonment on each count of conviction to be served concurrently, to be followed by three years of supervised release and payment of $677,765.98 in restitution and $1,900 in special assessments.[3]  On March 26, 2012, the court entered a Judgment as to Tori Elyse Aldridge (Docket Entry No. 281), and on March 29, 2012, the court entered an Amended Judgment as to Tori Elyse Aldridge (Docket Entry No. 284) to correct a clerical mistake.

On January 13, 2014, the judgments entered against Vincent Aldridge and Tori Aldridge were affirmed on appeal (Docket Entry No. 339; and on October 6, 2014, the United States Supreme Court denied the Aldridges' petition for writ of certiorari.  See United States v. Isgar, 739 F.3d 829 (5th Cir.), cert. denied, 135 S. Ct. 123 (2014).

## II.  Motions Filed by Vincent Aldridge and Tori Aldridge Before They Filed Motions to Vacate Under 28 U.S.C. § 2255

Before filing the pending motions under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody, Vincent Aldridge and Tori Aldridge filed three motions:

---

[3]See Minute Entry for Sentencing held on 3/22/2011 for Tori Elyse Aldridge.

Expedited Motion to Compel Government to Affirm or Deny Impropriety
of Venue (Docket Entry No. 346) filed by Vincent Aldridge and Tori
Aldridge; Expedited Motion for Partial Summary Judgment (Docket
Entry No. 348) filed by Tori Aldridge; and Expedited Motion to
Compel the Government to Confirm or Deny the Impropriety of Venue
and Expedited Motion for Summary Judgment (Docket Entry No. 350)
filed by Tori Aldridge.  For the reasons stated below, the court
concludes that all three of these motions should be denied because
they have no merit.

## A.    Motions Predating the Motions Filed Under 28 U.S.C. § 2255

On May 8, 2014, Vincent Aldridge and Tori Aldridge filed an
Expedited Motion to Compel Government to Affirm or Deny Impropriety
of Venue (Docket Entry No. 346).  In this motion

> [t]he Defendants Vincent W. Aldridge and Tori Elyse
> Aldridge, move this court for an order compelling the
> United States Attorney's office to make suitable
> inquiries and to report to the defendant[s] whether venue
> in . . . [this] matter was improper for counts Two
> through Twelve, herein referred to as the "wire fraud
> counts."  In particular, the defendants demand that the
> United States Attorney's office make suitable inquiries
> from the Department of Justice, the Federal Bureau of
> Investigation, the Internal Revenue Service, the Federal
> Reserve Bank of New York, and the Harris County District
> Attorney's office, and that the United States' Attorney's
> office be precluded from denying discovery or production
> of work product, including correspondence and documents,
> by merely relying on the current personal knowledge of
> the Assistant United States Attorney currently represent-
> ing the United States at this time.[4]

--------------------------------------------------------------------

[4]Aldridges' Motion to Compel, Docket Entry No. 346, p. 1.

In the Memorandum of Law and Facts In Support of an Expedited Hearing for a Stay of Conviction (Docket Entry No. 347) filed together with the Aldridges' Motion to Compel (Docket Entry No. 346), Tori Aldridge states that "[t]his is a request for civil relief under the All Writs Act, 28 USC 1961."[5]  Asserting that the Government's failure to prove venue for the wire fraud counts "is not reviewable under . . . § 2255 because it was raised on appeal and the [Fifth Circuit Court of Appeals] ruled [that] it was 'not properly preserved for appellate review,'"[6] because any error as to venue has been "waived,"[7] Tori Aldridge states that this motion "seeks to address the very narrow and specific errors that occurred after trial and sentencing,"[8] i.e., "[t]he alleged defect in venue, excessive delays of the appeals process and circumstances arising after the judgment was issued."[9]  Citing United States v. Miller, 599 F.3d 484, 489 (5th Cir. 2010), and United States v. Reyes, 945 F.2d 862, 866 (5th Cir. 1991), Tori Aldridge seeks a writ of audita querela, i.e., a writ the Aldridges describe as "used to challenge a judgment that was correct at the time it was rendered, but is now

---

[5]Memorandum of Law and Facts in Support of an Expedited Hearing for a Stay of Conviction, Docket Entry No. 347, p. 1.

[6]Id.

[7]Id.

[8]Id.

[9]Id.

incorrect because of the circumstances arising AFTER the judgment was issued."[10]

On July 23, 2014, Tori Aldridge filed an Expedited Motion for Partial Summary Judgment (Docket Entry No. 348).  In this motion, Tori Aldridge asserts that

> she is entitled to judgment as a matter of law on the following question:  Was venue for wire fraud alleged in Counts Two through Twelve improper in the Southern District of Texas?  This question is the only material fact in establishing the unconstitutionality of her conviction, as it completely eradicates the reasonability of the presumption of correctness.  The facts are clearly in favor of a determination that venue is improper. Mrs. Aldridge has proven that she is ACTUALLY INNOCENT of any crime.  The facts also mandate her immediate release from prison pending further action by the government, or any other remedy that may be available, that is just under the circumstances.[11]

Asserting that "[t]here is no record that the government ever disclosed that venue was improper,"[12] and that "[t]he government has a well-established duty to disclose exculpatory evidence,"[13] Tori Aldridge seeks an order vacating her convictions pursuant to the All Writs Act and Federal Rule of Criminal Procedure 16(d)(2)(D), which allows courts to issue orders that are "just under the circumstances."[14]

---

[10]Id.

[11]Expedited Motion for Partial Summary Judgment, Docket Entry No. 348, p. 1.

[12]Id.

[13]Id.

[14]Id. at 2.

On October 27, 2014, the court received a letter from Tori Aldridge, which has been filed as an Expedited Motion to Compel the Government to Confirm or Deny the Impropriety of Venue, and Expedited Motion for Summary Judgment (Docket Entry No. 350). The letter filed on October 27, 2014, asks the court to rule on the Aldridges' Motion to Compel (Docket Entry No. 346) and the Expedited Motion for Summary Judgment (Docket Entry No. 348).

## B.  Analysis

In the three motions that the Aldridges filed prior to filing their pending motions to vacate, set aside, or correct sentence by a person in federal custody, Docket Entry Nos. 346, 348, and 350, Vincent Aldridge and Tori Aldridge argue that the All Writs Act, 28 U.S.C. § 1651, particularly the writ of <u>audita querela</u>, entitles them to release because venue was improper for the wire fraud charges alleged in Counts 2 through 12, the appellate process was extraordinarily long, and their family circumstances are extraordinary.  The Government argues that the Aldridges' motions seeking a writ of <u>audita querela</u> have no merit.  For the reasons stated below, the court agrees.

### 1.  <u>The Court Has Already Ruled that the Writ of Audita Querela Does Not Warrant Relief for Tori Aldridge</u>

Tori Aldridge's argument that the All Writs Act, 28 U.S.C. § 1651, particularly the writ of <u>audita querela</u>, entitles her to release because venue was improper, the appellate process was

extraordinarily long, and their family circumstances are extraordinary, has already been considered and rejected by the court in an Order (Docket Entry No. 345) issued in response to her letter of March 24, 2014 (Docket Entry No. 343), requesting an expedited hearing for a stay of sentence pending further collateral review.[15]  In that Order the court stated:

> To the extent that Aldridge alleges improper venue and that "the appellate process has been extraordinarily delayed resulting in a denial of due process" her remedy is to file a motion for relief under 28 U.S.C. § 2255. To the extent that Aldridge claims that she is entitled to relief because of extraordinary family circumstances the court has no jurisdiction to alter her sentence or the conditions of her release for such reasons.  Although Aldridge contends that the court has original jurisdiction to grant her release under 28 U.S.C. § 1651, the court concludes that no basis exists under that statute to grant the relief she requests.[16]

2.   The Writ of Audita Querela Does Not Warrant Relief

The Aldridges' argument that they are entitled to release under the writ of audita querela either because the Government failed to establish that the Southern District of Texas was the proper venue for the wire fraud counts for which they were convicted, or because the appellate process was extraordinarily long, or because their family circumstances are extraordinary has no merit because the Aldridges' allegations prove that they are not entitled to the relief they seek.

---

[15]See Order, Docket Entry No. 345, entered on April 28, 2014.

[16]Id. at 1-2.

-11-

(a)   Applicable Law

The writ of _audita querela_, along with writs of _coram nobis_, _coram vobis_, and other common law writs, was specifically abolished in federal civil actions by amendments to Fed. R. Civ. P. 60(b), effective in 1948.  The United States Supreme Court has recognized, however, that the ancient writ of _coram nobis_ is still available to attack a criminal conviction, with jurisdiction vested under the All Writs Act, 28 U.S.C. § 1651(a).  _See_ _Miller_, 599 F.3d at 487-88 (citing _United States v. Morgan_, 74 S. Ct. 247, 249-53 (1954)). Accordingly, courts have generally held that the writ of _audita querela_ may also still be available under extremely rare and extraordinary circumstances.  _Id._ at 488.   The writ of _audita querela_

> is distinguished from _coram nobis_ in that _coram nobis_ attacks the judgment itself, whereas _audita querela_ is directed against the enforcement, or further enforcement, of a judgment which, when rendered, was just and unimpeachable. 7A C.J.S. _Audita Querela_ § 4 (2004).  In other words, a writ of _coram nobis_ attaches a judgment that was infirm at the time it was rendered for reasons that later came to light, while a writ of _audita querela_ is used to challenge a judgment that was correct at the time it was rendered but which is made infirm by matters that arose after its rendition.

_Id._ at 487.  Specifically, the writ of _audita querela_ is available, if at all, only "where there is a legal objection to a judgment which has arisen subsequent to that judgment. _Id._ at 488 (citing _Reyes_, 945 F.2d at 866) ("_audita querela_ is not available to vacate an otherwise final criminal conviction on purely equitable grounds").  Moreover, "the writ is only available where the legal

-12-

objection raised cannot be brought pursuant to any other post-conviction remedy." Id. (citing Reyes, 945 F.2d at 866).

    (b)  Application of the Law to the Facts

    (1)  **Venue**

On January 26, 2011, the Aldridges were convicted on all nineteen counts with which they were charged. Eleven of the nineteen counts of conviction, i.e., Counts 2 through 12, were for wire fraud for which the Aldridges now argue the Government failed to establish venue in the Southern District of Texas. The Aldridges argue that following entry of the judgments against them they received information showing that the Government failed to establish venue in the Southern District of Texas for the wire fraud counts. In support of this argument the Aldridges cite Tori Aldridge's affidavit attached to Docket Entry No. 346, and Government Exhibits 3c, 6c, 7c, 9c, 10c, and 25, all but one of which (Government Exhibit 25) was admitted into evidence at their trial during the Government's case-in-chief. In her affidavit Tori Aldridge states in pertinent part:

> 6.   In order to render [its] verdict, the jury must have found that the crimes alleged occurred in the Southern District of Texas.
>
> 7.   Since the time the verdict was returned, I personally discovered the existence of crucial evidence on that very issue. See Exhibit A, incorporated herein.
>
> Some time around October of 2012, I was researching white collar crime and wire fraud on the internet, when I came across a Washington Law Review article on wire fraud prosecutions and a national survey of defenses.

The scholarly article mentioned that many wire fraud indictments were being overturned nationwide because the prosecutions were often being brought in improper venue, due to the nature of the use of the wires.  This prompted me to research venue in the Fifth Circuit and in my case.

It is my opinion that the evidence of the wires listed in the indictment offer no proof of origination within the Southern District of Texas. . .

The documents provided by the Federal Reserve Bank of New York certified that the wires therein "were transacted through the New York Fed's processing facility located in New Jersey." . . .

In my opinion there is no evidence, either circumstantial or direct, to rest a conclusion [that] venue was proper. . . I prepared Exhibit A to summarize the void in the record for evidence of the propriety of venue.

8.  Mrs. Aldridge could not have, despite the exercise of reasonable diligence, discovered the existence of this evidence at any earlier time. . .

[9.] The defendants asked for Brady information more than once, including in a previously filed Mutual Discovery Agreement, filed with this court.  But the defendants were entitled to information regarding the impropriety of venue whether they asked for it or not.  See Brady v. Maryland, 373 US 83, 87, 83 S. Ct. [1197 (1963)] . . .

[10] Because the United States has so clearly ignored its well-established discovery duties with respect to exculpatory or impeachment evidence, a court order under Criminal Rule 16(d)(2) is appropriate.  Under that rule, the court may make any order that is "just under the circumstances."  In this case, a specific order requiring the United States Attorney's office to make the requisite inquiries within SEVEN DAYS, concerning the impropriety of venue and to confirm or deny its existence is the first and most important step to resolving the discovery dispute in this case.[17]

---

[17]Affidavit of Tori Elyse Aldridge, Docket Entry No. 346-1, pp. 1-2 ¶¶ 6-8 (the ninth and tenth paragraphs in this document are misnumbered 7 and 8).

Exhibit A attached to Tori Aldridge's affidavit states:

> Venue was improper
>
> The evidence of the wires listed in the indictment offer no proof of origination within the Southern District of Texas.  The wires associated with Counts Two through Ten were originated using routing number 021001033, from DBTCO Americas NYC.  There is no indication that the originating bank was within the Southern District of Texas.  (Government Exhibits 25, 3c, 6c, 7c, 9c, 10c, CR 106-109).
>
> The documents provided by the Federal Reserve Bank of New York certified that the wires therein "were transacted through the New York Fed's processing facility located in New Jersey."  Id.  New Jersey is in the District of New Jersey.  The evidence clearly shows that wires transmitted to routing number 111000753, the routing number identified with the First Southwestern Title Company escrow account were terminated at Comerica Bank Dallas, in the Northern District of Texas.  The trial record shows that the wires in the case at bar were indeed EFT wires, sent from one bank to another.  Thus, the routing numbers are the sole identifiers relevant to determining the location of the banks used to transmit the wires.  Even giving all deference to the verdict and looking at the totality of evidence of venue in the light most favorable to the verdict, there is neither one iota nor one scintilla of evidence, circumstantial or direct, to rest a conclusion that the government met its burden to prove venue by any standard.[18]

The record shows that Government Exhibits 3c, 6c, 7c, 9c, 10c, and 25 were all available to the Aldridges before or during their trial, and also shows that all but one of these exhibits was admitted into evidence during the Government's case-in-chief.  Because the only evidence on which the Aldridges rely in support of their motion for a writ of <u>audita querela</u> was undisputedly available to them before they were convicted and before judgments

---

[18]Exhibit A, Docket Entry No. 346-2, p. 1.

were entered against them, the Aldridges have failed to satisfy the first requirement for obtaining a writ of <u>audita querela</u>, i.e., they have failed to identify any legal defense that has arisen after the judgments entered against them. <u>See</u> <u>Miller</u>, 599 F.3d at 487-88; <u>Reyes</u>, 945 F.2d at 865-66.

Any argument the Aldridges are making that the Supreme Court's holding in <u>Brady</u>, 83 S. Ct. at 1194, entitles them to a writ of <u>audita querela</u> vacating their sentences lacks merit because their own pleadings show that the Government did, in fact, timely disclose the evidence on which they now base their entitlement to this writ. In response to the Government's motion to dismiss his § 2255 motion, Vincent Aldridge states that

> [t]he Wire Advices GX 3c-10c clearly establish the wires alleged in Counts Two through Twelve lacked proof of wire fraud venue in the Southern District of Texas. Although the Government tendered these exhibits in discovery it strategically did not offer them into evidence for this reason.[19]

Because the Government disclosed the exculpatory evidence on which the Aldridges now rely, the Aldridges have failed to establish any <u>Brady</u> violation, much less a <u>Brady</u> violation sufficient to justify issuance of an extraordinary writ. <u>See</u> <u>Jimenez v. Trominski</u>, 91 F.3d 767, 768-69 (rejecting petition for writ of <u>audita querela</u> upon concluding that petitioner failed to show government withheld material evidence in violation of <u>Brady</u>). Accordingly, the

---

[19]Petitioner's Rebuttal to Government Response and Motion to Dismiss, Docket Entry No. 378, p. 1.

Aldridges' motions for writs of <u>audita querela</u> based on either the Government's failure to establish venue for the wire fraud counts, or the Government's failure to disclose exculpatory evidence as required by <u>Brady</u>, 83 S. Ct. at 1194, will be denied.

### (2) Extraordinary Circumstances

Assuming without deciding that delay in resolution of their appeals and family circumstances could constitute extraordinary circumstances, the Aldridges are not entitled to a writ of <u>audita querela</u> vacating their sentences because such circumstances are equitable grounds for relief for which the writ of <u>audita querela</u> is not available. <u>See</u> <u>Reyes</u>, 945 F.2d at 866 (concluding that the writ of "<i>audita querela</i> is not available to vacate an otherwise final criminal conviction on purely equitable grounds"). Thus, the Aldridges' motions seeking writs of <u>audita querela</u> based on extraordinary circumstances arising either from delay in resolution of their appeals or from family circumstances will be denied.

### III. <u>The Aldridges' Motions to Vacate Under 28 U.S.C. § 2255 and the Governments' Motions to Dismiss the Aldridges' § 2255 Motions</u>

Vincent Aldridge asserts seven arguments in support of his motion to vacate: (1) Government misconduct; (2) ineffective assistance of counsel -- venue; (3) ineffective assistance of counsel -- withdrawal and statute of limitation; (4) denial of due process to a fair appeal; (5) indictment failed to confer subject matter jurisdiction because it failed to state a cognizable federal

claim; (6) violation of due process to criminalize strictly commercial transactions; and (7) admission of inadmissible evidence under Rules 803(6) and 807.[20]  Tori Aldridge asserts four arguments in support of her motion to vacate, all but one of which mirror those raised by Vincent Aldridge:  (1) venue was improper for the wire fraud counts and the Government knew that venue was improper before the case was presented to the grand jury; (2) trial counsel was ineffective for failing to raise a specific objection to venue in the Rule 29 Motion for Acquittal; (3) trial counsel was ineffective for failing to raise defenses of withdrawal and statute of limitation, and for failing to request a jury instruction on these defenses; and (4) delay of appeal violated her right to due process.[21]

28 U.S.C. § 2255(a) allows

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Section 2255(b) provides that

. . . If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was

---

[20]Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Vincent Aldridge's Motion Under 28 U.S.C. § 2255"), Docket Entry No. 352, pp. 4-14.

[21]Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Tori Aldridge's Motion Under 28 U.S.C. § 2255"), Docket Entry No. 362, pp. 5-11.

not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

See United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004) ("Section 2255 provides the federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate judgment and sentence in his trial court."). The Supreme Court has made clear that a collateral challenge "may not do service for an appeal" and that a § 2255 petitioner "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief. United States v. Frady, 102 S. Ct. 1584, 1593 (1982). "Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). Similarly, issues that were raised but rejected on direct appeal are barred from consideration on collateral review. See United States v. Webster, 392 F.3d 787, 791 & n.5 (5th Cir. 2004) (citing United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions.")). Review of convictions under § 2255 ordinarily is limited to

(1) "questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on

collateral review without a showing of cause and
prejudice," and

(2) "[o]ther types of error . . . [that] could not have
been raised on direct appeal *and*, if condoned, would
result in a complete miscarriage of justice."

United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998).

A § 2255 motion requires an evidentiary hearing unless the
motion, the files, and the record conclusively show the prisoner is
entitled to no relief. United States v. Bartholomew, 974 F.2d 39,
41 (5th Cir. 1992). Upon review of the Aldridges' motions to
vacate, and the files and records of this case, the court concludes
that an evidentiary hearing is not necessary because the matters
reviewed conclusively show that Vincent Aldridge and Tori Aldridge
are not entitled to relief that would impact the duration of their
sentences to imprisonment. See United States v. Segler, 37 F.3d
1131, 1137 (5th Cir. 1994); Rule 8(a) following § 2255 (recognizing
that hearings are not always required).

The Government moves to dismiss the motions that Vincent
Aldridge and Tori Aldridge have filed under 28 U.S.C. § 2255.[22] The
Government argues that Vincent Aldridge's § 2255 motion should be
dismissed because

[t]he record of the case conclusively shows that no
relief is appropriate on the basis of V. Aldridge's

_____

[22]Government's Response and Motion to Dismiss Vincent
Aldridge's Motion Filed Under 28 U.S.C. § 2255 ("Government's
Response to Vincent Aldridge"), Docket Entry No. 375, and
Government's Response and Motion to Dismiss Tori Aldridge's Motion
Filed Under 28 U.S.C. § 2255 ("Government's Response to Tori
Aldridge"), Docket Entry No. 376.

allegations. The record in this case shows that neither trial counsel nor appellate counsel was deficient, nor has V. Aldridge shown that he was prejudiced by their alleged deficiencies.[23]

The Government argues that Tori Aldridge's § 2255 motion to vacate should be dismissed for essentially the same reasons, i.e., because

[t]he record of the case conclusively shows that no relief is appropriate on the basis of T. Aldridge's allegations. The record in this case shows that trial counsel was not deficient, nor has T. Aldridge shown that she was prejudiced by [her] alleged deficiencies.[24]

Vincent Aldridge and Tori Aldridge have both filed responses in opposition to the Government's motions to dismiss.[25] The Aldridges' arguments may be grouped into four categories: (1) Government misconduct arising from perjury before the grand jury; (2) ineffective assistance of counsel arising from trial counsel's failure to raise defenses of withdrawal and limitations, and failure to preserve lack of venue for appellate review; (3) denial of a fair appeal, and (4) reassertions of arguments already made to the Fifth Circuit on direct appeal.

---

[23]Government's Response to Vincent Aldridge, Docket Entry No. 375, p. 7.

[24]Government's Response to Tori Aldridge, Docket Entry No. 376, p. 6.

[25]Petitioner's Rebuttal to Government Response and Motion to Dismiss ("Vincent Aldridge's Rebuttal"), Docket Entry No. 378, and Petitioner's Reply to the Government's Response and Motion to Dismiss ("Tori Aldridge's Reply"), Docket Entry No. 377. Tori Aldridge's Reply was also filed as Docket Entry No. 380; Docket Entry Nos. 377 and 380 are identical.

A.    **Government Misconduct — Perjury Before Grand Jury About Venue**

Vincent Aldridge and Tori Aldridge argue that the Government violated their Fifth Amendment and Sixth Amendment rights to due process, proper venue, and an unbiased grand jury by deceptively persuading the grand jury to accept wire fraud charges despite knowing that the wire communications alleged in Counts 2 through 12 of the Indictment did not "breach" the Southern District of Texas.[26] Vincent Aldridge argues that

> [t]he issue is whether the government had knowledge of the travel of the wires within its possession prior to the Grand Jury presentment.  The evidence presented at trial clearly established that the government, through its agents, FBI Special Agent Robert McCallum and Assistant U.S. Attorney Jennifer Lowery . . . knowingly presented false testimony to the Grand July concerning the venue of the wire fraud counts in the Indictment. The wire fraud Counts 2 through 12 were the only substantive charges pled.  The Government continued this malfeasance through trial and still violates due process under the spirit of Brady v. Maryland, . . . even now.[27]

_____

[26]Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255 ("Vincent Aldridge's Memorandum of Law"), Docket Entry No. 353, p. 2; Memorandum of Law and Facts in Support of Habeas Corpus Relief and Bail Pending Review ("Tori Aldridge's Memorandum of Law"), Docket Entry No. 363, pp. 3-5.

[27]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353, p. 5.  See also Tori Aldridge's Memorandum of Law, Docket Entry No. 363, p. 4 ("The issue is whether the government had knowledge of the travel of the wires within its possession prior to the Grand Jury presentment.   The evidence presented at trial, clearly established that the government, through its agents . . . knowingly presented false testimony to the Grand Jury concerning the venue of the wire fraud counts in the Indictment.   The wire fraud Counts 2 through 12 were the only substantive charges pled.   The Government continued this malfeasance through trial and still violates due process under the spirit of Brady v. Maryland, 373 U.S. 83 (1963) even now.").

Citing the trial testimony of Government witnesses Mark Gold and FBI agent Robert McCallum, Vincent Aldridge argues "[i]n this case, the Grand Jury was deceived by the government concerning the wires' travel."[28]   Vincent Aldridge argues that "[t]he Government could never meet its burden of proving proper venue; thus, the Grand Jury could not find probable cause as to the wires."[29]   In addition, Vincent Aldridge argues that "[b]eyond the Grand Jury, these facts draw implications of Brady [v. Maryland, 373 U.S. 83 (1963)] (prosecutors have a duty to learn of any favorable evidence known to others acting on the government's behalf, including the police)."[30]

Citing Costello v. United States, 76 S. Ct. 406 (1956), and the Memorandum Opinion and Order entered on May 10, 2011 (Docket Entry No. 135), denying Vincent Aldridge's motion to dismiss the indictment based on assertions of Government misconduct arising from the presentation of allegedly perjured testimony to the grand jury, the Government argues that Vincent Aldridge's § 2255 claim of governmental misconduct based on the alleged presentation of false

---

[28]Id. at 3.

[29]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353, p. 8.  See also Tori Aldridge's Memorandum of Law, Docket Entry No. 363, p. 5 ("The government could never meet its burden of proving proper venue; thus, the Grand Jury could not find probable cause as to the wires.").

[30]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353, p. 8.  See also Tori Aldridge's Memorandum of Law, Docket Entry No. 363, p. 5.

evidence regarding venue for the wire fraud counts to the grand jury is foreclosed because the court has already found that there was no evidence of misconduct before the grand jury.[31] In <u>Costello</u>, 76 S. Ct. at 409, the Supreme Court was asked to "exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence." The Supreme Court rejected this request and held instead that an indictment valid on its face is not subject to challenge because the grand jury acted on the basis of inadequate or incompetent evidence. <u>Id.</u> at 408-09. In the May 10, 2011, Memorandum Opinion and Order, the court rejected Vincent Aldridge's claims that the Government had knowingly presented perjured testimony to both the grand jury and the petit jury regarding the existence of a conspiracy.[32]

Vincent Aldridge responds that

> [i]t is readily apparent the Court's May 10, 2011 finding concerning unrelated issues of misconduct do not foreclose this separate and distinct issue of misconduct which was not part of that review. The present issue was only discovered by the Petitioner after becoming a (Pro Se) defendant and after having time to review the voluminous record. The Government highlighted this fact in its response as it states this is an "additional"

---

[31]Government's Response to Vincent Aldridge, Docket Entry No. 375, pp. 13-14; Government's Response to Tori Aldridge, Docket Entry No. 376.

[32]<u>See</u> Memorandum Opinion and Order, Docket Entry No. 135, pp. 5-9.

claim of misconduct (D.E. 375 pg. 13). The alleged
misconduct surfaced only after review of GX 25 Wire
Certification which was not admitted into evidence but
listed on the Government's witness list. See (D.E. 59).
Government exhibit GX 25 Wire Certification clearly
establishes the Government possessed this knowledge prior
to its grand jury presentment. The Wire Advices GX 3c-
10c clearly establish the wires alleged in Counts Two
through Twelve lacked proof of wire fraud venue in the
Southern District of Texas. Although the Government
tendered these exhibits in discovery it strategically did
not offer them into evidence for this reason.

The Government had Mark Gold testify from an excel spread
sheet with this information included. He testified from
GX 29 See (D.E. 59). However, the Government failed to
admit this exhibit into evidence as well, as it []
clearly proved a lack[] of wire fraud venue also. . .

The Government was fully aware from the beginning that it
could not meet its burden of proof concerning wire fraud
venue, but chose instead to violate the Petitioners
Constitutional right to proper venue. In doing so the
Government also violated the Petitioner's right to [an]
unbiased grand jury and a fair tribunal, ultimately due
process. There is no factual dispute of these material
fact[s] as the Government did not respond [to] this
argument.[33]

The Aldridges' argument that their convictions on Counts 2

through 12 for wire should be vacated or set aside under 28 U.S.C.

§ 2255 because "[t]he Government could never meet its burden of

proving proper venue; thus, the Grand Jury could not find probable

cause as to the wires,"[34] has no merit. This alleged error is not

reviewable under 28 U.S.C. § 2255 because it could have been raised

---

[33]Vincent Aldridge's Rebuttal, Docket Entry No. 378, p. 1.

[34]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353,
p. 8. See also Tori Aldridge's Memorandum of Law, Docket Entry
No. 363, p. 5 ("The government could never meet its burden of
proving proper venue; thus, the Grand Jury could not find probable
cause as to the wires.").

but was not raised on direct appeal, and because the Aldridges fail to make any showing of cause for their failure to raise this issue on appeal or actual prejudice arising therefrom.

The Supreme Court has emphasized repeatedly that a "collateral challenge may not do service for an appeal." <u>Frady</u>, 102 S. Ct. at 1593.  After conviction and exhaustion or waiver of any right to appeal, courts "are entitled to presume that [the defendant] stands fairly and finally convicted."  <u>Id.</u> at 1592.  A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude, <u>Hill v. United States</u>, 82 S. Ct. 468, 471 (1962), and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default, and "actual prejudice" resulting from the error.  <u>Frady</u>, 102 S. Ct. at 1594.  This cause and prejudice standard presents "a significantly higher hurdle" than the "plan error" standard that courts apply on direct appeal.  <u>Id.</u> at 1593.  Courts apply this rigorous standard in order to ensure that final judgments command respect and that their binding effect does not last only until "the next in a series of endless postconviction collateral attacks."  <u>Id.</u> at 1593.  "A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error."  <u>United States v. Shaid</u>, 937 F.2d 228, 232 (5th Cir. 1991) (en banc), <u>cert. denied</u>, 112 S. Ct. 978 (1992) (citing <u>Murray v. Carrier</u>, 106 S. Ct. 2639, 2648 (1986) (applying the cause and prejudice test to fundamental defects affecting the court's truth finding function)).

-26-

Vincent Aldridge raised the issue of Government misconduct before the grand jury in a Motion to Dismiss that he filed pro se on April 1, 2011 (Docket Entry No. 119), over two months after his conviction on January 26, 2011.  In his post-conviction motion to dismiss the indictment, Vincent Aldridge argued that Special Agent Robert McCallum committed perjury before the grand jury and that Assistant United States Attorney Jennifer Lowery committed subornation of perjury and prosecutorial misconduct before the grand jury.[35] Tori Aldridge also raised the Government's presentation of perjured testimony to the grand jury in two motions for new trial submitted after her conviction but prior to her sentencing.[36] Although none of the Aldridges' post-conviction motions addressed the specific issue of false testimony regarding venue for the wire fraud counts, both Vincent Aldridge and Tori Aldridge are nevertheless procedurally barred from raising a collateral challenge to their convictions on that basis because neither of them has established cause for failing to raise this claim earlier. Moreover, Vincent Aldridge admits that the Government tendered during discovery all of the evidence on which this argument is now

---

[35]Memorandum Opinion and Order, Docket Entry No. 135, p. 6 (citing Vincent Aldridge's Motion to Dismiss, Docket Entry No. 119, p. 4).

[36]Tori Aldridge's Memorandum of Law in Support of Sentencing and Motion for New Trial or Evidentiary Hearing, Docket Entry No. 249, pp. 12-44; and Defendant's 2nd Memorandum of Law in Support of Sentencing and Motion for New Trial or Evidentiary Hearing, Docket Entry No. 260, pp. 12-44.

based.  Vincent Aldridge's contention that he did not discover this
issue until after becoming a pro se defendant and after having time
to review the voluminous record is belied by the fact that he filed
his post-conviction motion to dismiss the indictment on a pro se
basis.  Because any prosecutorial misconduct claim could have been
raised on direct appeal, but was not raised on direct appeal, this
claim is procedurally barred.  See Shaid, 937 F.2d at 231–32.

**B.   Ineffective Assistance of Counsel**

Vincent Aldridge and Tori Aldridge argue that they suffered
ineffective assistance of counsel in violation of the Sixth
Amendment in two respects because their trial counsel:  (1) failed
to raise the defenses of withdrawal and statute of limitations and
(2) failed to preserve venue for appellate review by raising
improper venue in their Rule 29 motions for acquittal.

1.   Standard of Review

One basis for challenging the validity of a prisoner's custody
or sentence under 28 U.S.C. § 2255 is through a claim of
ineffective assistance of counsel.  See Massaro v. United States,
123 S. Ct. 1690, 1693-94 (2003).  An ineffective assistance of
counsel claim requires a showing that (1) counsel's performance was
legally deficient, and (2) the deficiency prejudiced the defense.
Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).  The proper
standard for evaluating counsel's performance is whether "counsel's
representation fell below an objective standard of reasonableness."

-28-

Hill v. Lockhart, 106 S. Ct. 366, 369 (1985) (citing Strickland, 104 S. Ct. at 2065). Counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. Strickland, 104 S. Ct. at 2066. To establish prejudice under the second prong of the Strickland test the defendant must show that his attorney's errors were so serious that they rendered "the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 113 S. Ct. 838, 844 (1993). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Strickland, 104 S. Ct. at 2068.

    2.    Analysis

        (a)    Trial Counsel Was Not Constitutionally Ineffective for Failing to Raise Defenses of Withdrawal and Limitations

Vincent Aldridge alleges that

    Counsel's failure to fully develop the affirmative defenses of withdrawal and statute of limitations, coupled with the failure to request the proper jury instructions, left Petitioner without a valid defense for the jury to consider. If counsel had properly requested jury instructions concerning these two defenses, the jury would have had a clear alternative to the government's misconduct. . .

    Petitioner took affirmative steps to defeat the objects of the alleged conspiracy when his office requested the cancellation of the wire to Superb Construction and contacted the lender; see Exhibit B, wire cancellation form. The record establishes that Petitioner ceased doing business with Eiland and then

Robinson and communicated this to the alleged co-
conspirators.  (See CR 893, 963; see also CR R.1124.)
The government established this defense on its direct
examination of Gary Robinson, stating that after an
argument "Eiland and Vincent parted ways." (CR 954-55.)
The government further established this defense with
Robinson, stating that Vincent insisted that Robinson
return $60,000 related to the 1425 Birdsall transaction,
but Robinson refused (CR 893); also, that Robinson and
Eiland had closed three properties prior to March 26,
2005 -- the statute of limitations ran on March 26, 2010
-- and were not involved in any other transactions after
March 25, 2005 (CR 953-54).   See also government's
appellate brief, Doc. No. 00512161232, pp. 35-36. All of
the aforementioned are affirmative acts inconsistent with
the object of the conspiracy.[37]

Tori Aldridge similarly argues that

[w]itnesses testified that the Aldridges ceased doing
business with Al Eiland before the alleged conspiracy.
Wire cancellation forms confirm that there were
affirmative steps to end any participation in a
conspiracy.  Trial counsel did not ask for a withdrawal
instruction or an instruction to eliminate acts that took
place in another conspiracy that occurred outside the
statute of limitations.   This information was used to
prove that the allegations in our indictment were
actually true.  It was used to prove that Mrs. Aldridge
altered loan applications and that Mr. Aldridge recruited
buyers, and it was used to prove other elements of the
scheme to defraud lenders.[38]

The Government argues that

Vincent Aldridge's claim that trial counsel was
ineffective by failing to establish a defense of
withdrawal and statute of limitations which he asserts
would have formed a complete defense is without merit as
there was no evidence of withdrawal by the Aldridges and
all charged conduct was within the statute of

---

[37]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353,
pp. 15-16.

[38]Tori Aldridge's Motion Under 28 U.S.C. § 2255, Docket Entry
No. 362, p. 8.

limitations. . . This claim should be dismissed as failing to show both deficiency and prejudice as required by <u>Strickland</u>.[39]

Count 1 of the indictment alleges a conspiracy from on or about August of 2004 to June 22, 2005, between defendants, Vincent Wallace Aldridge, Tori Elyse Aldridge, and Gilbert Barry Isgar, and others known and unknown to the grand jury to induce lenders to fund fraudulently obtained residential mortgage loans all in violation of 18 U.S.C. § 1349.[40] Count 13 of the indictment alleges a conspiracy from on or about August of 2004 to June 22, 2005, between defendants Vincent Wallace Aldridge, Tori Elyse Aldridge, and Gilbert Barry Isgar, and others known and unknown to the grand jury to engage in and attempt to engage in monetary transactions within the United States in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, specifically, wire fraud, in violation of 18 U.S.C. § 1957, all in violation of 18 U.S.C. § 1956(h).

There is ample evidence that the conspiracies charged in Counts 1 and 13 existed, and there is no evidence that either Vincent Aldridge or Tori Aldridge ever withdrew or attempted to withdraw from those conspiracies. As the Government asserts:

> The Aldridges may have learned the scheme from Alvin Eiland, but after Eiland and V. Aldridge parted ways, coconspirators V. Aldridge, T. Aldridge and Isgar

---

[39]Government's Response to Vincent Aldridge, Docket Entry No. 375, p. 15.

[40]Indictment, Docket Entry No. 1, pp. 1-15.

> continued the scheme without him. The remaining
> coconspirators continued to fraudulently obtain funds
> from lenders in an amount in excess of $2 million to
> purchase the properties at 1415 Birdsall, 1411 Birdsall,
> 1417 Birdsall, 1419 Birdsall, 1421 Birdsall, 1423
> Birdsall, and 5805 Maxie, between March 25, 2005 through
> May 6, 2005. *See* GX 30, 26. Government's Exhibit No. 30
> shows funded loan amounts for Southwestern Title Company.
> Government Exhibit 26 shows the money laundering, that
> is, when the funded loan amounts, obtained by mail or
> wire fraud, were transferred from the title company to
> Aldridge & Associates or one of the other Aldridge
> accounts.[41]

See also Isgar, 739 F.3d at 835 (rejecting Tori Aldridge's claim

that no reasonable jury could conclude that a conspiracy existed

after March 26, 2005); id. at 837 (rejecting Vincent Aldridge's

challenges to the sufficiency of the evidence underlying his

convictions for conspiracy to commit money laundering under 18

U.S.C. §§ 1956(h) and 1957). The Aldridges cite evidence that they

ceased doing business with Eiland and Robinson. But since neither

Eiland nor Robinson was alleged a co-conspirator for the crimes

charged in Counts 1 and 13, and since the Aldridges fail to cite

any evidence that they ever ceased doing business with each other

or with Isgar, i.e., with the alleged co-conspirators, the

Aldridges have failed to cite any evidence from which a reasonable

jury could have concluded that either one of them withdrew from

either of the conspiracies charged in Counts 1 and 13.

The essence of the conspiracies charged in Counts 1 and 13 is

"the combination of minds in an unlawful purpose." United States

---

[41]Government's Response to Vincent Aldridge, Docket Entry
No. 375, p. 16.

v. Hirsch, 100 U.S. 33, 34 (1879).   To convict a defendant of either of these conspiracies the Government had to prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy).   Since conspiracy is a continuing offense, United States v. Kissel, 31 S. Ct. 124, 126-27 (1910), a defendant who has joined a conspiracy continues to violate the law "through every moment of [the conspiracy's] existence," Hyde v. United States, 32 S. Ct. 793, 803 (1912), and becomes responsible for the acts of his co-conspirators in pursuit of their common plot, Pinkerton v. United States, 66 S. Ct. 1180, 1183-84 (1946). Withdrawal from a conspiracy "terminates the defendant's liability for post-withdrawal acts of his co-conspirators, but he remains guilty of conspiracy." United States v. Salazar, 751 F.3d 326, 331 n.1 (5th Cir. 2014) (citing Smith v. United States, 133 S. Ct. 714, 719 (2013)).   Thus, "[f]ar from contradicting an element of the offense, withdrawal presupposes that the defendant committed the offense." Id.   Moreover, the conspiracies charged in Counts 1 and 13 allege violations of broadly applicable federal conspiracy statutes that do not require an overt act. See United States v. Pascacio-Rodriguez, 749 F.3d 353, 364 & n.49 (5th Cir. 2014) ("[A] conspiracy to commit wire and/or mail fraud does not require proof of an overt act."); United States v. Guillermo Balleza, 613 F.3d

-33-

432, 433 n.1 (5th Cir. 2010) ("We take this opportunity to clarify this court's jurisprudence on whether an overt act in furtherance of the conspiracy is an element of the offense of conspiracy to launder money in violation of 18 U.S.C. § 1956(h). It is not."). See also Whitfield v. United States, 123 S. Ct. 687, 691 (2005) (holding that an overt act is not an element of conspiracy to launder money). "If the conspiracy does not even require the commission of an overt act, a defendant can never timely withdraw and can never negate liability as to the conspiracy charge." Salazar, 751 F.3d at 331 (citing United States v. Francis, 916 F.2d 464, 466 (8th Cir. 1990)).

Because the conspiracy crimes charged in Counts 1 and 13 do not require proof of overt acts, proof of withdrawal would not have negated any element of those offenses. Thus, the Aldridges' contention that their trial counsel were constitutionally ineffective for failing to raise the defense of withdrawal has no merit because counsel is not required by the Sixth Amendment to raise meritless defenses. See United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1979).

The Aldridges' contention that their trial counsel were constitutionally ineffective for failing to raise the defense of limitations is similarly without merit because as explained by the Fifth Circuit in rejecting Tori Aldridge's argument on direct appeal "that no reasonable jury could find that a conspiracy existed after March 26, 2005," Isgar, 739 F.3d at 835, "[a] review

-34-

of the record . . . reveals ample evidence from which the jury could have reasonably concluded that Tori Aldridge acted with the intent to further the fraudulent scheme [within the statute of limitations, i.e., after March 26, 2005]." Id. The Fifth Circuit's opinion includes a detailed summary of evidence showing that Tori Aldridge was an active participant in the fraudulent scheme within the limitations period. Id.

This court's review of the record similarly reveals ample evidence from which the jury could have reasonably concluded that Vincent Aldridge acted with intent to further the fraudulent scheme within the limitations period. For example, one of the straw buyers, Michelle Shields, testified at trial that in early 2005 she and her husband spoke with Vincent Aldridge about investing in real estate, that Vincent Aldridge told them that he had properties available for investment pursuant to a model that allowed investors to use their good credit to purchase properties and receive about $10,000.00 at closing without having to pay mortgages because tenants would be found to lease the properties, and that after six months to a year the properties would be resold and the investors might receive additional money at that time.[42] Michelle Shields also testified that on April 22, 2005, she purchased a property located at 1411 Birdsall, that Vincent Aldridge and Tori Aldridge came to her house to conduct the closing, and that $75,442.83 of

---

[42]See Transcript of Jury Trial - Volume 3, Docket Entry No. 139, pp. 152:16-154:5.

the money she borrowed to purchase the property was disbursed to Aldridge & Associates' IOLTA account.[43]  Because this evidence was sufficient for the jury to conclude that Vincent Aldridge acted with intent to further the fraudulent scheme within the limitations period, i.e., after March 26, 2005, Vincent Aldridge's contention that his trial counsel was ineffective for failing to raise the defense of limitations has no merit.  See Gibson, 55 F.3d at 179 (counsel is not required by the Sixth Amendment to raise meritless defenses).

> (b)   Trial Counsel Was Not Constitutionally Ineffective
>        for Failing to Object at Trial or to Seek Acquittal
>        on Wire Fraud Charges for Improper Venue

Vincent Aldridge alleges that

> [t]he petitioner's Counsel was ineffective as he failed
> to preserve venue a Constitutional right.   Counsel's
> actions [fell] below practice norms in the following
> ways.  First, Counsel due to lack of diligence failed to
> discover the tendered wire certifications which clearly
> established that wire fraud venue was not proper.   Two,
> Counsel failed to timely object at trial as the trial was
> devoid of evidence of proper venue.   Third, Counsel
> failed to specifically raise venue in his Rule 29 motion
> for acquittal as required in the Fifth Circuit.   Had
> Counsel raised venue at any point mentioned the
> petitioner would have been acquitted with no chance for
> retrial.[44]

Tori Aldridge similarly alleges in ground two of her § 2255 motion:

> Was trial counsel ineffective by failing to raise a
> specific objection to venue in his Rule 29 Motion for
> acquittal?

---

[43]Id. at 157:7-167:11.

[44]Vincent Aldridge's Motion Under 28 U.S.C. § 2255, Docket Entry No. 352, pp. 5-6.

Trial counsel moved for acquittal after the government rested from its case, and again at the close of all evidence.  Trial counsel did not specifically cite an objection to venue, though he did say it was his belief that the government did not meet their burden of proof in any area, on any ground.  The Fifth Circuit concluded that venue was not properly preserved for appellate review.[45]

The Government responds that the Aldridges' claims for ineffective assistance of counsel based on the failure to establish venue in the Southern District of Texas for the wire fraud charges should be dismissed because counsel was not deficient for failing to raise a ground for acquittal that had no merit, and because the Aldridges cannot show prejudice as required by <u>Strickland</u>.[46]  The Government argues that

> V. Aldrich's [sic] claims that Counsel was deficient for failing to "discover the tendered wire certifications which clearly established that wire fraud venue was not proper" and to object at trial and/or raise the issue in his Rule 29 Motion, are conclusory and therefore insufficient to show that counsel's failure to challenge "venue" was outside the range of reasonable professional assistance.  In his Memorandum in Support, V. Aldridge adds that "the Government could never meet its burden of proving proper venue; thus, the Grand Jury could not find probable cause as to the wires.  Likewise, the petit jury did not find that the wires presented breached the Southern District of Texas by a preponderance of the evidence."  D.E. 353, p. 8.  The record shows otherwise.[47]

---

[45]Tori Aldridge's Motion Under 28 U.S.C. § 2255, Docket Entry No. 362, p. 6.

[46]Government's Response to Vincent Aldridge, Docket Entry No. 375, pp. 14-15; Government's Response to Tori Aldridge, Docket Entry No. 376.

[47]Government's Response to Vincent Aldridge, Docket Entry No. 375, p. 14.

In response to the same ineffective assistance claim made by Tori Aldridge, the Government argues that "T. Aldrich's [sic] claims that 'venue was improper' because 'the record contains NO evidence that venue was proper for wire fraud' because 'the wires did not breach the Southern District of Texas' are conclusory and belied by the record."[48]  Asserting that the wire transmissions at issue crossed state lines, the Government argues that:

> [t]he petit jury could indeed find that the wire transfers of funds for each of the wire fraud counts alleged in the indictment crossed state lines when they were used to transfer funds from the lenders to the title company.  On the second day of trial, Mark Gold, investigator and custodian of records for the Federal Reserve Bank in New York City, testified from the records of the wire transfers at issue, GX 1C, 2C, 3C, 4C, 5B, 6C, [7]C, 8C, 9C, and 10C, that each of the wires crossed state lines during the process of transferring the funds. D.E. 138 (Day Two), pp. 122-124; *see also* GX 29 (spreadsheet of records obtained from the Federal Reserve Bank of New York).  The evidence shows further that those wires, in crossing state lines from New York, each made their way to the title company in Texas, First Southwestern Title, to fund the loans.[49]

### (1) Counsel's Performance Was Not Deficient

In order for counsel's performance to have been deficient it had to have been objectively unreasonable for the Aldridges' trial attorneys not to object to venue at trial.  Strickland, 104 S. Ct. at 2064 ("When a convicted defendant complains of the

---

[48]Government's Response to Tori Aldridge, Docket Entry No. 376, p. 12.

[49]Government's Response to Vincent Aldridge, Docket Entry No. 375, pp. 14-15.  See also Government's Response to Tori Aldridge, Docket Entry No. 376, pp. 12-13.

ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."). "Counsel need not raise every nonfrivolous [argument], but should instead present 'solid, meritorious arguments based on directly controlling precedent.'" Ries v. Quarterman, 522 F.3d 517, 532 (5th Cir. 2008) (quoting Schaetzle v. Cockrell, 343 F.3d 440, 445 (5th Cir. 2003), and United States v. Williamson, 183 F.3d 458, 463 (5th Cir. 1999)). As the Fifth Circuit explained:

> Such directly controlling precedent is rare. Often, factual differences will make authority easily distinguishable, whether persuasively or not. In such cases, it is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed. But failure to raise a discrete, purely legal issue, where the precedent could not be more pellucid or applicable, denies adequate representation.

Schaetzle, 343 F.3d at 445. There is no constitutional deficiency in the performance of counsel if, at trial, there is no established legal or factual basis for an objection. See Nichols v. Scott, 69 F.3d 1255, 1288 (5th Cir. 1995). Under this standard the court finds that the Aldridges' counsel's performance was not deficient.

The Aldridges argue that their trial counsel performed deficiently by failing to challenge the Government's establishment of venue on the wire fraud counts because the Government failed to present evidence showing that any of the individual wire transmissions charged in Counts 2 through 12 of the indictment "breached" the Southern District of Texas. As evidence that the

wire transmissions did not "breach" the Southern District of Texas, the Aldridges cite evidence showing that the wire transmissions charged in Counts 2 through 12 originated outside of Texas, passed through the Federal Reserve Bank in New Jersey, and ended at Comerica Bank in Dallas, Texas, which is located in the Northern District of Texas.[50]   In support of the argument that their counsel's failure to challenge venue for the wire fraud charges was objectively unreasonable the Aldridges advance two arguments, one procedural and one substantive.

The Aldridges' procedural argument is based on United States v. Carreon-Palacio, 267 F.3d 381, 392-93 (5th Cir. 2001), and United States v. Strain, 396 F.3d 689 (5th Cir. 2006).[51]   In Carreon-Palacio, 267 F.3d at 392-93, the Fifth Circuit held that

> [a] defendant indicted by an instrument which lacks sufficient allegations to establish venue waives any future challenge by failing to object before trial.  In situations where adequate allegations are made but the impropriety of venue only becomes apparent at the close of the government's case, a defendant may address the error by objecting at that time, and thus preserve the issue for appellate review.

Thus, under Carreon-Palacio, 267 F.3d at 392-93, objection to improper venue need not be made before trial but, instead, may be made at the close of trial "where adequate allegations [of venue

_____

[50]See Motion for Summary Judgment, Immediate Release, or Bond Pending 28 U.S.C. § 2255 Determination, Docket Entry No. 360, p. 5 ("The Petitioner requests that the Court take judicial notice that Comerica Bank Dallas is not within the Southern District of Texas. It is in the Northern District of Texas.").

[51]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353, pp. 10-13.

are made in the indictment] but the impropriety of venue only becomes apparent at the close of the government's case."

In Strain, 396 F.3d at 694, the Fifth Circuit reversed the defendant's conviction for harboring or concealing a fugitive due to improper venue because the Government failed to present evidence that the defendant had committed a physical act of assistance in the Western District of Texas.   The defendant had spoken on the telephone with her husband, a fugitive, while she was in the Western District of Texas.  Id. at 691.  The defendant's husband instructed her to meet him in New Mexico the next day, which she did.  Id.  Two days later the defendant was arrested and indicted on one count of harboring or concealing a fugitive in violation of 18 U.S.C. § 1701.  The indictment charged that the offense occurred in both the Western District of Texas and the District of New Mexico.  See id. at 692.  The jury convicted the defendant of harboring a fugitive after concluding that the offense charged was "begun" in the Western District of Texas.   Reasoning that conviction for a violation of § 1071 required the defendant to have committed a physical act of assistance, and that a telephonic warning would constitute a physical act of assistance, the Fifth Circuit concluded that the Government failed to proffer sufficient evidence from which a jury could infer that the defendant in fact warned her husband about an outstanding warrant during the telephone call from the Western District of Texas.  Id. at 695-96.

The Aldridges contend that the holding in <u>Carreon-Palacio</u>, 267 F.3d at 381, is applicable here because the indictment adequately alleged venue in this district for all counts, but that the Government's evidence at trial failed to establish venue for the wire fraud charges alleged in Counts 2 through 12 of the indictment.  The Aldridges argue that their trial counsel's failure to seek acquittal on the wire fraud charges due to the Government's failure to establish venue for those charges in this district was objectively unreasonable because under <u>Strain</u>, 396 F.3d at 689, a timely objection to the Government's failure to establish venue would have resulted in their acquittal either at trial or, if not at trial, then on appeal.[52]  The Aldridges' argument has no merit because they fail to cite any authority for their contentions that the Government's evidence was not legally sufficient to establish venue in this district for the wire fraud offenses charged in their indictment, or that a timely objection on that basis would have resulted in their acquittal on those charges.

The Aldridges' substantive argument that venue for the wire fraud charges alleged in Counts 2 through 12 was improper in this

---

[52]<u>Id.</u> at 12 ("If counsel had objected according to the Fifth Circuit's precedent, Petitioner would have been entitled to an acquittal without a chance for retrial."); <u>id.</u> at 13 ("As a result of counsel's failure to properly preserve venue, the Constitutional rights of Petitioner have been irreparably harmed and Petitioner was deprived of an acquittal as a matter of law.  Petitioner urges this Court to vacate the judgment in this case and enter an acquittal on his behalf.").

district rests on the contention that wire fraud is a continuing

offense governed by 18 U.S.C. § 3237(a), which provides:

> Except as otherwise expressly provided by enactment of
> Congress, any offense against the United States begun in
> one district and completed in another, or committed in
> more than one district, may be inquired of and prosecuted
> in any district in which such offense was begun,
> continued, or completed.
>
> Any offense involving the use of the mails,
> transportation in interstate or foreign commerce, or the
> importation of an object or person into the United States
> is a continuing offense and, except as otherwise
> expressly provided by enactment of Congress, may be
> inquired of and prosecuted in any district from, through,
> or into which such commerce, mail matter, or imported
> object or person moves.

18 U.S.C. § 3237(a).[53]   By statutory definition, mail fraud is a

continuing offense that may be prosecuted "in any district from,

through, or into which" the mailed matter has moved.  Id.  Although

§ 3237(a) does not specifically address the offense of wire fraud,

to the extent a wire communication is sent from one district to or

through one or more other districts, wire fraud may also be

considered a "continuing" offense for which venue is proper in any

district in which the offense was "begun, continued, or completed."

The Aldridges have not, however, cited any case in which the Fifth

Circuit has applied § 3237(a) to wire fraud.  Instead, citing

United States v. Pace, 314 F.3d 344, 349 (9th Cir. 2002), and

United States v. Mohammad, 502 F.3d 646, 652 (7th Cir. 2007), cert.

---

[53]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353,
p. 4; Tori Aldridge's Memorandum of Law, Docket Entry No. 363,
pp. 2-3.

denied, 128 S. Ct. 1104 (2008), the Aldridges argue that the Government's evidence was insufficient to establish venue in this district for the wire fraud charges alleged in Counts 2 through 12, and that their counsel were ineffective for failing to seek acquittal on that basis because venue for a wire fraud offense is proper only in a district where an alleged wire transmission began, continued, or completed.[54]

In Muhammad the Seventh Circuit determined that venue was proper in a district in Wisconsin where the defendant did not commit any substantial acts constituting the crimes for which the Government charged him, but where the defendant directed all his actions toward that district. Muhammad and his cousin, both Wisconsin residents, took a bus from Wisconsin to Arizona. While in Arizona, Muhammad convinced a female friend and her sister to fly to Arizona to meet with someone Muhammad claimed could help the female friend launch a clothing line. Muhammad bought the tickets and told the women he would pay to fly them back to Wisconsin. After the two women arrived in Arizona, Muhammad informed them that his secretary had not booked their return flights and that the group would drive back to Wisconsin in two cars. On the return trip a police officer stopped the car the two women were driving. Muhammad called his female friend to warn her not to consent to a

---

[54]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353, p. 4; Tori Aldridge's Memorandum of Law, Docket Entry No. 363, pp. 2-3.

search of the car.  The sister, however, consented.  The officer found a rental agreement stating that the sisters were driving the car to Wisconsin.  The officer also found three kilograms of cocaine in a suitcase.  The officer arrested the two women.  Both men traveled back to Wisconsin.

The Government charged Muhammad in Wisconsin with attempting to possess cocaine with the intent to distribute it in violation of 21 U.S.C. § 841 and with hindering the communication of information relating to a federal crime in violation of 18 U.S.C. § 1512(b)(3).  At trial Muhammad argued that venue was improper because the only acts he committed in Wisconsin were merely preparatory and could not support an attempt charge in Wisconsin. The district court rejected that argument, concluding that venue in Wisconsin was proper because the evidence permitted the inference that Muhammad had attempted to possess cocaine with the intent to distribute it in Wisconsin.  After discussing the "nature of the crime alleged" and the  "location of the act or acts constituting" the crime, the Seventh Circuit affirmed the venue finding.  The <u>Muhammad</u> court based its decision on the defendant's intent for his criminal acts to reach Wisconsin:

> Although the defendant's acts occurred in several states, they were aimed at only one state-Wisconsin. The alleged crime was the inchoate one of attempted possession with intent to distribute, and, at the time his plan was thwarted, Mr. Muhammad certainly had moved far beyond mere preparatory acts.  Rather, he had constructive possession of the cocaine and had placed in motion a carefully constructed plan that was designed to place

those drugs within the Eastern District of Wisconsin. Clearly, Mr. Muhammad intended that the effect of his actions was to be felt in that district.

Id. at 655. Because Muhammad had planned and intended to possess and to distribute the cocaine in Wisconsin, it was not unfair or unconstitutional to try him there (quite apart from the fact that he was also a Wisconsin resident).

In Pace, 314 F.3d 350, the defendant was charged with wire fraud in the District of Arizona based on wire transmissions from Mexico to Ohio. Id. at 347-48. The Government argued that venue was proper in Arizona because the defendant had devised his scheme to defraud in Arizona. Id. at 349. Noting that "it is using wires and causing wires to be used in furtherance of the fraudulent scheme that constitutes prohibited conduct," the Ninth Circuit held: "[V]enue is established in those locations where the wire transmission at issue originated, passed through, or was received, *or from which it was orchestrated*. In other words, venue may lie only where there is a direct or causal connection to the misuse of wires." Id. Since, however, the Government failed to prove a causal connection between the defendant's actions in Arizona and the wire transfer from Mexico to Ohio, the Ninth Circuit concluded that venue was improper in the District of Arizona. Id. at 350-51.

Neither Muhammad nor Pace supports the Aldridges' contention that venue for the wire fraud offenses charged in Counts 2 through 12 of the indictment was improper in this district. If anything,

-46-

both of these cases support the Government's position that venue was proper in this district.   In Muhammad, 502 F.3d 646, the Seventh Circuit applied and endorsed a "substantial contacts" approach to evaluating venue.   Recognizing that the Constitution does not mandate a single exclusive venue, and that there is no singular policy or test to determine constitutional venue, several circuits have adopted this "substantial contacts" test that requires consideration of a number of factors — the site of the defendant's acts, the elements and nature of the crime, the locus and effect of the criminal conduct, and the suitability of each district for accurate fact-finding.   Id. at 655.   See also United States v. Reed, 773 F.2d 477 (2d Cir. 1985) (perjury and obstruction of justice); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181 (2d Cir. 1989) (conspiracy to sell misbranded products); United States v. Goldberg, 830 F.2d 459 (3d Cir. 1987) (wire fraud and transportation of stolen property in interstate commerce); United States v. Beddow, 957 F.2d 1330 (6th Cir. 1992) (conspiracy to possess and distribute cocaine, money laundering, and income tax evasion); United States v. Williams, 788 F.2d 1213 (6th Cir. 1986) (willful failure to appear).

In Pace the Ninth Circuit held that the "essential conduct" prohibited by the federal wire fraud statute is "the misuse of the wires as well as any acts that cause such misuse."   Pace, 314 F.3d at 349.   The Ninth Circuit held that in a wire fraud case venue is

established "where the wire transmission at issue originated, passed through, or was received, or *from which it was orchestrated*." Pace, 314 F.3d at 349. In the present case there is ample evidence that the Aldridges orchestrated the wire transmissions charged in Counts 2 through 12 from the Southern District of Texas. Moreover, "once membership in a scheme to defraud is established, a knowing participant is liable for any wire communication which subsequently takes place or which previously took place in connection with the scheme." United States v. Izydore, 167 F.3d 213, 219 (5th Cir. 1999) (quoting United States v. Faulkner, 17 F.3d 745, 771-72 (5th Cir.), cert. denied, 115 S. Ct. 193 (1994).

The Aldridges argue that their trial counsel rendered ineffective assistance by failing to object to the Government's failure to prove venue in this district for the wire fraud charges alleged in Counts 2 through 12 and by failing to seek acquittal on those charges on grounds that venue for them was improper in this district. But the Aldridges point to no authority that would permit this court to conclude either that venue for those charges was improper in this district, or that their trial counsel's failure to seek acquittal on those charges on that basis was objectively unreasonable. See United States v. Pomranz, 43 F.3d 156, 158-62 (5th Cir. 1995) (rejecting ineffective assistance claim based on counsel's alleged failure to raise venue defense where

venue was proper in district where jury trial was held).  Because the Aldridges' acts in the Southern District of Texas were essential to setting in motion the wire transfers of the purchase money, whether an electronic pulse was or was not transmitted within or across the territorial boundaries of the Southern District of Texas is an academic point.  The Aldridges' acts in the Southern District of Texas foreseeably caused the wires to be used in furtherance of the fraudulent scheme.  Thus, it was not objectively unreasonable for the Aldridges' trial counsel not to object during trial that the Government had failed to establish venue in this district for the wire fraud charges or not to base their Rule 29 motions for acquittal on improper venue for the wire fraud charges alleged in Counts 2 through 12.

### (2)   Counsel's Performance Did Not Cause Prejudice

The prejudice component of the test established in Strickland 104 S. Ct. at 2064, focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.  See Kimmelman v. Morrison, 106 S. Ct. 2574, 2592 (1986).  See also Goodwin v. Johnson, 132 F.3d 162, 174 (5th Cir. 1997) ("[T]he presence or absence of prejudice . . . with respect to claims of ineffective assistance of counsel at the trial . . . level[], hinges upon the fairness of the trial and the reliability of the judgment of conviction resulting therefrom.").

Asserting that "[d]ue to the Government's lack of proof of venue, the jury had no evidence to consider on this issue,"[55] Vincent Aldridge argues that

> the record remains devoid of proof of proper venue. It should be clear, based on the facts of this case, that if Petitioner had been counseled properly concerning this matter, he would have chosen acquittal as a matter of right. Counsel did not meet the practice norms in the Fifth Circuit. This lack of adequate representation allowed the defendant to endure a loss of liberty beyond that permitted in the Constitution due to improper venue. If counsel had objected according to the Fifth Circuit's precedent, Petitioner would have been entitled to an acquittal without a chance for retrial.[56]

Tori Aldridge similarly argues that

> [h]ad counsel made a motion for acquittal specific to venue, the venue right would have been preserved for appellate review and the trial court could have been noticed that venue was at issue. Either court would have ruled in favor of the Aldridges. The Aldridges were entitled to an acquittal at the time of trial.[57]

Citing United States v. Stratton, 649 F.2d 1066, 1079 (5th Cir. 1981), Tori Aldridge also argues that "abridgement of this [venue] right denies the defendant the fundamental right [to] fair process guaranteed by the constitution, and is inherently a harmful error, just as abridgement of the right to a trial by jury is inherently

---

[55]Vincent Aldridge's Memorandum of Law, Docket Entry No. 353, p. 12. See also Vincent Aldridge's Rebuttal, Docket Entry No. 378, p. 2 (citing Strain, 396 F.3d 689, in support of assertion that "due to lack of sufficient proof of venue the defendant was entitled to an acquittal without the right to a retrial").

[56]Id.

[57]Tori Aldridge's Memorandum of Law, Docket Entry No. 363, p. 4 (citing Strain, 396 F.3d at 689).

a harmful error."[58]   Thus, Tori Aldrige argues that "the entire
proceeding was fundamentally unfair."[59]

The Aldridges' allegations of prejudice lack merit because
they are not based on facts capable of showing that their trial was
fundamentally unfair due to the lack of safeguards that the venue
provisions of the Constitution are meant to provide.  The Aldridges
have not cited any facts from which the court could conclude that
they suffered any bias, disadvantage, or inconvenience because they
had to defend the wire fraud charges alleged against them in
Counts 2 through 12 in this district.  See Travis v. United States,
81 S. Ct. 358 [634] (1961) (observing that the venue provisions of
the Constitution are meant to act as safeguards, protecting
defendants from bias, disadvantage, and inconvenience in the
adjudication of the charges filed against them).  Nor have the
Aldridges cited any basis for concluding that the result of their
trial on the wire fraud charges alleged in Counts 2 through 12 was
unreliable.  Because the Aldridges have failed to cite facts
showing that they were in any way prejudiced by their counsel's
performance at trial, or that there is any reasonable probability
that but for their counsel's claimed errors in failing to object to
venue for the wire fraud charges and in failing to move for
acquittal on that basis, they would not have been convicted of

---

[58]Id. at 5.

[59]Id. at 4.

those charges or would not have faced the same prison sentences, their claims for ineffective assistance of counsel fail <u>Strickland</u>'s second prong.

## C.   The Aldridges Cannot Claim They Were Denied a Fair Appeal

Vincent Aldridge alleges that

> [t]he Fifth Circuit denied the petitioner due process and right to a fair appellate process by not properly addressing his arguments concerning prosecutorial misconduct and a Napue violation.  In doing so the appellate 3 panel of judges . . . created a public deception by falsifying the legal and factual context of the petitioner's arguments via its rulings.  In essence the Court failed to directly address the petitioner's arguments which would have lead to an acquittal or the cumulative effect of error.  Instead the court supplied erroneous facts to the public and did not meet the gravamen of the petitioners arguments.[60]

Tori Aldridge similarly alleges in ground four:

> Did the delays in the appeals process constitute extraordinary delays such that they violated the Aldridges' right to a speedy appeal?

> Mrs. Aldridge raised the question of the impropriety of venue before she ever self-surrendered to authorities. She filed her appeal in November of 2012, surrendered on January 8, 2013 and did not have her appeal decided until January of 2014.  All told, the process still did not lend itself to correct the obvious, plain error of improper venue.  Mrs. Aldridge equivocates this debacle to a sick game of hide-the-pea.  Every court has been content to look the other way when the error is plain on its face.[61]

---

[60]Vincent Aldridge's Motion Under 28 U.S.C. § 2255, Docket Entry No. 352, pp. 8-9.

[61]Tori Aldridge's Motion Under 28 U.S.C. § 2255, Docket Entry No. 362, p. 9.

Vincent Aldridge's claim that the Fifth Circuit denied him due process of law by failing to properly address the arguments that he raised in his direct appeal, and Tori Aldridge's claim that the Fifth Circuit denied her due process of law by failing to properly address the issue of improper venue are both subject to dismissal because neither claim is cognizable under 28 U.S.C. § 2255. <u>See United States v. Seyfert</u>, 67 F.3d 544, 546 (5th Cir. 1995) (listing claims that are cognizable under 28 U.S.C. § 2255). Relief requested under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." <u>United States v. Capua</u>, 656 F.3d 1033, 1037 (5th Cir. 1981). A § 2255 motion is not a vehicle to collaterally attack the validity of an appellate court's order or decision -- it is a vehicle to address the constitutionality of the movant's sentence in limited circumstances. Thus, this claim is not cognizable upon habeas review.

## D. Claims Addressed on Direct Appeal Are Procedurally Barred

Vincent Aldridge asserts three claims that he acknowledges in his § 2255 motion were raised and rejected on direct appeal: Lack of subject matter jurisdiction (Ground 5);[62] violation of due

---

[62]Vincent Aldridge's Motion Under 28 U.S.C. § 2255, Docket Entry No. 352, p. 12 (stating, "[t]his issue was raised on direct

process to criminalize strictly commercial transactions (Ground 6);[63] and admittance of title files under 803(6) and 807 (Ground 7).[64]   These claims are all subject to dismissal because this court has no power to reconsider the Fifth Circuit's ruling on any of these issues.   See United States v. Fields, 761 F.3d 443, 463 (5th Cir. 2014) ("Challenges to issues decided on direct appeal are foreclosed from consideration in a § 2255 motion.").   "It is well settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." United States v. Kallish, 780 F.2d 506, 508 (5th Cir. 1986) (citing United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980)).

## IV.  Certificate of Appealability

"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus."  28 U.S.C. § 2255(d).

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability" (COA).  28 U.S.C.

-------

appeal").

[63]Id. at 13 (stating, "[t]his issue was raised on direct appeal").

[64]Id. at 14 (stating, "[t]his issue was raised on direct appeal").

§ 2253(c)(1)(B).  Although the Aldridges have not yet filed a notice of appeal, this court nonetheless addresses whether they would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003).  To warrant a grant of the COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 120 S. Ct. 1595, 1603-04 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir.), cert. denied, 123 S. Ct. 1549 (2002) (relying upon Slack, 120 S. Ct. at 1603-04).

The court concludes that reasonable jurists could not debate the denial of the Aldridges' § 2255 motions on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed.   Accordingly, the Aldridges are not entitled to a COA as to their claims.

### V.   Conclusions and Order

For the reasons stated in § II, above, Vincent Wallace Aldridge's and Tori Elyse Aldridge's Expedited Motion to Compel Government to Affirm or Deny Impropriety of Venue (Docket Entry No. 346) is **DENIED**; Tori Aldridge's Expedited Motion for Partial Summary Judgment (Docket Entry No. 348) is **DENIED**; and Tori Aldridge's Expedited Motion to Compel the Government to Confirm or Deny the Impropriety of Venue and Expedited Motion for Summary Judgment (Docket Entry No. 350) are **DENIED**.   Tori Aldridge's Letter Requesting an Expedited Hearing and Bail Pending Review (Docket Entry No. 381) is **DENIED**.

For the reasons stated in § III, above, the court concludes the motions that the Aldridges have filed under 28 U.S.C. § 2255 do not require a hearing because the motions, the files, and the record conclusively show the Aldridges are entitled to no relief. Accordingly, for the same reasons Vincent Wallace Aldridge's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 352) is **DENIED**; Vincent Aldridge's Request for Stay of Sentence and Immediate

Release Pending § 2255 Review (Docket Entry No. 354) is **DENIED**; Vincent Aldridge's Motion for Summary Judgment, Immediate Release, or Bond Pending 28 U.S.C. § 2255 Determination (Docket Entry No. 360) is **DENIED**; Tori Elyse Aldridge's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 362) is **DENIED**; the Government's Response and Motion to Dismiss Vincent Aldridge's Motion Filed Under 28 U.S.C. § 2255 (Docket Entry No. 375) is **GRANTED**; and the Government's Response and Motion to Dismiss Tori Aldridge's Motion Filed Under 28 U.S.C. § 2255 (Docket Entry No. 376) is **GRANTED**.

For the reasons stated in § IV, above, the court concludes that the Aldridges are not entitled to a COA as to their claims.

**SIGNED** at Houston, Texas, on this the 9th day of July, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE